RAILROAD COMPANY *v.* FRALOFF.

1. It is competent for general carriers of passengers, by specific regulations, distinctly brought to the knowledge of the passenger, which are reasonable, and not inconsistent with a statute or their duties to the public, to protect themselves against liability as insurers of his baggage which exceeds a fixed amount in value, except upon additional compensation proportioned to the risk.
2. As a condition precedent to a contract for its transportation, they may require information from him as to its value, and demand *extra* compensation for any excess beyond that which he may reasonably demand to be transported as baggage under the contract to carry the person.
3. They may be discharged from liability for its full value, if he, by any device or artifice, evades inquiry as to such value, whereby a responsibility is imposed upon them beyond what they are bound to assume in consideration of the ordinary fare charged for the transportation of the person.
4. In the absence of legislation, or of special regulations by the carriers, or of conduct by him misleading them as to such value, his failure to disclose it, when no inquiry is made of him, is not, in itself, a fraud upon them.
5. To the extent that articles taken by him for his personal use when travelling exceed in quantity and value such as are ordinarily or usually taken by passengers of like station and pursuing like journeys, they are not baggage for which the carriers are, by general law, responsible as insurers.
6. Whether he has taken such an excess of baggage is a question not of law for the sole or the final determination of the court, but of fact for the jury, under proper guidance as to the law of the case. Their determination of it upon the evidence — no error of law appearing — is not subject to re-examination here.
7. Sect. 4281, Rev. Stat., has no reference to the liability of carriers by land for the baggage of passengers.

ERROR to the Circuit Court of the United States for the Southern District of New York.

The facts are stated in the opinion of the court.

*Mr. Elliott F. Shepard* for the plaintiff in error.

*Mr. James W. Gerard, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

This is a writ of error to a judgment rendered against the New York Central and Hudson River Railroad Company, in an action by Olga de Maluta Fraloff to recover the value of certain articles of wearing-apparel alleged to have been taken from her trunk while she was a passenger upon the cars of the

company, and while the trunk was in its charge for transportation as part of her baggage.

There was evidence before the jury tending to establish the following facts : —

The defendant in error, a subject of the Czar of Russia, possessing large wealth, and enjoying high social position among her own people, after travelling in Europe, Asia, and Africa, spending some time in London and Paris, visited America in the year 1869, for the double purpose of benefiting her health and seeing this country.  She brought with her to the United States six trunks of ordinary travel-worn appearance, containing a large quantity of wearing-apparel, including many elegant, costly dresses, and also rare and valuable laces, which she had been accustomed to wear upon different dresses when on visits, or frequenting theatres, or attending dinners, balls, and receptions.  A portion of the laces was made by her ancestors upon their estates in Russia.  After remaining some weeks in the city of New York, she started upon a journey westward, going first to Albany, and taking with her, among other things, two of the trunks brought to this country.  Her ultimate purpose was to visit a warmer climate, and, upon reaching Chicago, to determine whether to visit California, New Orleans, Havana, and probably Rio Janeiro.  After passing a day or so at Albany, she took passage on the cars of the New York Central and Hudson River Railroad Company for Niagara Falls, delivering to the authorized agents of the company for transportation as her baggage the two trunks above described, which contained the larger portion of the dress-laces brought with her from Europe.  Upon arriving at Niagara Falls she ascertained that one of the trunks, during transportation from Albany to the Falls, had been materially injured, its locks broken, its contents disturbed, and more than two hundred yards of dress-lace abstracted from the trunk in which it had been carefully placed before she left the city of New York.  The company declined to pay the sum demanded as the value of the missing laces ; and, having denied all liability therefor, this action was instituted to recover the damages which the defendant in error claimed to have sustained by reason of the loss of her property.

Upon the first trial of the case, in 1873, the jury, being unable to agree, was discharged. A second trial took place in the year 1875. Upon the conclusion of the evidence in chief at the last trial, the company moved a dismissal of the action, and, at the same time, submitted numerous instructions which it asked to be then given to the jury, among which was one peremptorily directing a verdict in its favor. That motion was overruled, and the court declined to instruct the jury as requested. Subsequently, upon the conclusion of the evidence upon both sides, the motion for a peremptory instruction in behalf of the company was renewed, and again overruled. The court thereupon gave its charge, to which the company filed numerous exceptions, and also submitted written requests, forty-two in number, for instructions to the jury. The court refused to instruct the jury as asked, or otherwise than as shown in its own charge. To the action of the court in the several respects indicated the company excepted in due form. The jury returned a verdict against the company for the sum of $10,000, although the evidence, in some of its aspects, placed the value of the missing laces very far in excess of that amount.

It would extend this opinion to an improper length, and could serve no useful purpose, were we to enter upon a discussion of the various exceptions, unusual in their number, to the action of the court in the admission and exclusion of evidence, as well as in refusing to charge the jury as requested by the company. Certain controlling propositions are presented for our consideration, and upon their determination the substantial rights of parties seem to depend. If, in respect of these propositions, no error was committed, the judgment should be affirmed without any reference to points of a minor and merely technical nature, which do not involve the merits of the case, or the just rights of the parties.

In behalf of the company it is earnestly claimed that the court erred in not giving a peremptory instruction for a verdict in its behalf. This position, however, is wholly untenable. Had there been no serious controversy about the facts, and had the law upon the undisputed evidence precluded any recovery whatever against the company, such an instruction

would have been proper. 1 Wall. 369; 11 How. 372; 19 id. 269; 22 Wall. 121. The court could not have given such an instruction in this case without usurping the functions of the jury. This will, however, more clearly appear from what is said in the course of this opinion.

The main contention of the company, upon the trial below, was that good faith required the defendant in error, when delivering her trunks for transportation, to inform its agents of the peculiar character and extraordinary value of the laces in question; and that her failure in that respect, whether intentional or not, was, in itself, a fraud upon the carrier, which should prevent any recovery in this action.

The Circuit Court refused, and, in our opinion, rightly, to so instruct the jury. We are not referred to any legislative enactment restricting or limiting the responsibility of passenger carriers by land for articles carried as baggage. Nor is it pretended that the plaintiff in error had, at the date of these transactions, established or promulgated any regulation as to the quantity or the value of baggage which passengers upon its cars might carry, without extra compensation, under the general contract to carry the person. Further, it is not claimed that any inquiry was made of the defendant in error, either when the trunks were taken into the custody of the carrier, or at any time prior to the alleged loss, as to the value of their contents. It is undoubtedly competent for carriers of passengers, by specific regulations, distinctly brought to the knowledge of the passenger, which are reasonable in their character and not inconsistent with any statute or their duties to the public, to protect themselves against liability, as insurers, for baggage exceeding a fixed amount in value, except upon additional compensation, proportioned to the risk. And in order that such regulations may be practically effective, and the carrier advised of the full extent of its responsibility, and, consequently, of the degree of precaution necessary upon its part, it may rightfully require, as a condition precedent to any contract for the transportation of baggage, information from the passenger as to its value; and if the value thus disclosed exceeds that which the passenger may reasonably demand to be transported as baggage without extra compensation, the

carrier, at its option, can make such additional charge as the risk fairly justifies. It is also undoubtedly true that the carrier may be discharged from liability for the full value of the passenger's baggage, if the latter, by false statements, or by any device or artifice, puts off inquiry as to such value, whereby is imposed upon the carrier responsibility beyond what it was bound to assume in consideration of the ordinary fare charged for the transportation of the person. But in the absence of legislation limiting the responsibility of carriers for the baggage of passengers; in the absence of reasonable regulations upon the subject by the carrier, of which the passenger has knowledge; in the absence of inquiry of the passenger as to the value of the articles carried, under the name of baggage, for his personal use and convenience when travelling; and in the absence of conduct upon the part of the passenger misleading the carrier as to the value of his baggage, — the court cannot, as matter of law, declare, as it was in effect requested in this case to do, that the mere failure of the passenger, unasked, to disclose the value of his baggage is a fraud upon the carrier, which defeats all right of recovery. The instructions asked by the company virtually assumed that the general law governing the rights, duties, and responsibilities of passenger carriers prescribed a definite, fixed limit of value, beyond which the carrier was not liable for baggage, except under a special contract or upon previous notice as to value. We are not, however, referred to any adjudged case, or to any elementary treatise which sustains that proposition, without qualification. In the very nature of things, no such rule could be established by the courts in virtue of any inherent power they possess. The quantity or kind or value of the baggage which a passenger may carry under the contract for the transportation of his person depends upon a variety of circumstances which do not exist in every case. "That which one traveller," says Erle, C. J., in *Philpot* v. *Northwestern Railway Co.* (19 C. B. N. s. 321), "would consider indispensable, would be deemed superfluous and unnecessary by another. But the general habits and wants of mankind will be taken in the mind of the carrier when he receives a passenger for conveyance." Some of the cases seem to announce the broad doctrine that,

by general law, in the absence of legislation, or special regulations by the carrier, of the character indicated, a passenger may take, without extra compensation, such articles adapted to personal use as his necessities, comfort, convenience, or even gratification may suggest; and that whatever may be the quantity or value of such articles, the carrier is responsible for all damage or loss to them, from whatever source, unless from the act of God or the public enemy.  But that, in our judgment, is not an accurate statement of the law.  Whether articles of wearing-apparel, in any particular case, constitute baggage, as that term is understood in the law, for which the carrier is responsible as insurer, depends upon the inquiry whether they are such in quantity and value as passengers under like circumstances ordinarily or usually carry for personal use when travelling.  " The implied undertaking," says Mr. Angell, " of the proprietors of stage-coaches, railroads, and steamboats to carry in safety the baggage of passengers is not unlimited, and cannot be extended beyond ordinary baggage, or such baggage as a traveller usually carries with him for his personal convenience."    Angell, Carriers, sect. 115.  In *Hannibal Railroad* v. *Swift* (12 Wall. 272), this court, speaking through Mr. Justice Field, said that the contract to carry the person " only implies an undertaking to transport such a limited quantity of articles as are ordinarily taken by travellers for their personal use and convenience, such quantity depending, of course, upon the station of the party, the object and length of his journey, and many other considerations."    To the same effect is a decision of the Queen's Bench in *Macrow* v. *Great Western Railway Co.* (Law Rep. 6 Q. B. 121), where Chief Justice Cockburn announced the true rule to be " that whatever the passenger takes with him for his personal use or convenience, according to the habits or wants of the particular class to which he belongs, either with reference to the immediate necessities or to the ultimate purpose of the journey, must be considered as personal luggage."    2 Parsons, Contr., 199.  To the extent, therefore, that the articles carried by the passenger for his personal use exceed in quantity and value such as are ordinarily or usually carried by passengers of like station and pursuing like journeys, they are not baggage for which the carrier,

by general law, is responsible as insurer. In cases of abuse by the passenger of the privilege which the law gives him, the carrier secures such exemption from responsibility, not, however, because the passenger, uninquired of, failed to disclose the character and value of the articles carried, but because the articles themselves, in excess of the amount usually or ordinarily carried, under like circumstances, would not constitute baggage within the true meaning of the law. The laces in question confessedly constituted a part of the wearing-apparel of the defendant in error. They were adapted to and exclusively designed for personal use, according to her convenience, comfort, or tastes, during the extended journey upon which she had entered. They were not merchandise, nor is there any evidence that they were intended for sale or for purposes of business. Whether they were such articles in quantity and value as passengers of like station and under like circumstances ordinarily or usually carry for their personal use, and to subserve their convenience, gratification, or comfort while travelling, was not a pure question of law for the sole or final determination of the court, but a question of fact for the jury, under proper guidance from the court as to the law governing such cases. It was for the jury to say to what extent, if any, the baggage of defendant in error exceeded in quantity and value that which was usually carried without extra compensation, and to disallow any claim for such excess.

Upon examining the carefully guarded instructions given to the jury, we are unable to see that the court below omitted any thing essential to a clear comprehension of the issues, or announced any principle or doctrine not in harmony with settled law. After submitting to the jury the disputed question as to whether the laces were, in fact, in the trunk of the defendant in error, when delivered to the company at Albany for transportation to Niagara Falls, the court charged the jury, in substance, that every traveller was entitled to provide for the exigencies of his journey in the way of baggage, was not limited to articles which were absolutely essential, but could carry such as were usually carried by persons travelling, for their comfort, convenience, and gratification upon such journeys; that the liability of carriers could not be maintained to

the extent of making them responsible for such unusual articles as the exceptional fancies, habits, or idiosyncrasies of some particular individual may prompt him to carry; that their responsibility as insurers was limited to such articles as it was customary or reasonable for travellers of the same class, in general, to take for such journeys as the one which was the subject of inquiry, and did not extend to those which the caprice of a particular traveller might lead that traveller to take; that if the company delivered to the defendant in error, aside from the laces in question, baggage which had been carried, and which was sufficient for her as reasonable baggage, within the rules laid down, she was not entitled to recover; that if she carried the laces in question for the purpose of having them safely kept and stored by railroad companies and hotel-keepers, and not for the purpose of using them, as occasion might require, for her gratification, comfort, or convenience, the company was not liable; that if *any portion* of the missing articles were reasonable and proper for her to carry, and all was not, they should allow her the value of *that portion.*

Looking at the whole scope and bearing of the charge, and interpreting what was said, as it must necessarily have been understood both by the court and jury, we do not perceive that any error was committed to the prejudice of the company, or of which it can complain. No error of law appearing upon the record, this court cannot reverse the judgment because, upon examination of the evidence, we may be of the opinion that the jury should have returned a verdict for a less amount. If the jury acted upon a gross mistake of facts, or were governed by some improper influence or bias, the remedy therefore rested with the court below, under its general power to set aside the verdict. But that court finding that the verdict was abundantly sustained by the evidence, and that there was no ground to suppose that the jury had not performed their duty impartially and justly, refused to disturb the verdict, and overruled a motion for new trial. Whether its action, in that particular, was erroneous or not, our power is restricted by the Constitution to the determination of the questions of law arising upon the record. Our authority does not extend to a re-examination of facts which have been tried by the jury under instruc-

tions correctly defining the legal rights of parties. *Parsons* v. *Bedford*, 3 Pet. 446 ; 21 How. 167 ; *Insurance Company* v. *Folsom*, 18 Wall. 249.

It is, perhaps, proper to refer to one other point suggested in the elaborate brief of counsel for the company. Our attention is called to section 4281 of the Revised Statutes, which declares that " if any shipper of platina, gold, gold-dust, coins, jewelry, . . . trinkets, . . . silk in a manufactured or unmanufactured form, whether wrought up or not wrought up with any other material, furs or laces, or any of them, contained in any parcel, package, or bundle, shall lade the same as freight or baggage on any vessel, without, at the time of such lading, giving to the master, clerk, agent, or owner of such vessel receiving the same a written notice of the true character and value thereof, and having the same entered on the bill of lading therefor, the master and owner, of such vessel shall not be liable as carriers thereof in any form or manner ; nor shall any such master or owner be liable for any of such goods beyond the value and according to the character thereof, so notified and entered."

It is sufficient to say that the section has no application whatever to this case. It has reference alone to the liability of carriers by water who transport goods and merchandise of the kind designated. It has no reference to carriers by land, and does not assume to declare or restrict their liability for the baggage of passengers.

*Judgment affirmed.*

MR. JUSTICE FIELD, with whom concurred MR. JUSTICE MILLER and MR. JUSTICE STRONG, dissenting.

I dissent from the judgment of the court in this case. I do not think that .two hundred and seventy-five yards of lace, claimed by the owner to be worth $75,000, and found by the jury to be of the value of $10,000, can, as a matter of law, be properly considered as baggage of a passenger, for the loss of which the railroad company, in the absence of any special agreement, should be held liable.