[No. 345.   February 16, 1888.]

# CITY NATIONAL BANK, DEFENDANT IN ERROR, v. GEORGE W. HICKOX, PLAINTIFF IN ERROR.

PROMISSORY NOTE—BONA FIDE PURCHASER WITHOUT NOTICE—ASSUMP-SIT—FRAUD—EVIDENCE—INSTRUCTIONS.—In an action of assumpsit upon a negotiable promissory note, by plaintiff, as indorsee for value before maturity, where the defendant pleaded non assumpsit, and set-off in the form of the common counts, to the first of which plaintiff added a similiter and to the second filed a replication, and the evidence was that defendant had purchased for $2,300, a certain lot of ground in Santa Fe, where he resided and carried on the business of a jeweler, giving in part payment therefor a set of diamonds at $750, which had cost defendant between $400, and $500, assuming the payment of a balance of $950, on a mortgage of $1,000 on the lot, and giving his note for the remainder at thirty days with the understanding that the grantor would hold it himself, and not part with it; that the purchase was made upon the representations of the grantor that he had bought the property cheap for $2,000, and that it was worth $2,300; and there was evidence tending to show that the lot was worth but $1,000, also evidence tending to show that it was worth $2,300, and the deed to the grantor recited a consideration of $2,000, but the party from whom the grantor purchased testified that he had sold the property to the grantor for $1,000, and the defendant testified that he had not paid the mortgage.—Held, that the evidence was not sufficient to constitute such fraud in the inception of the note as to put upon plaintiff the burden of proving that plaintiff had paid value for it, and the court did not, therefore, err in so instructing the jury; the doctrine that, if there is a particle of evidence tending to support the cause of action or defense, it must be left to the jury, never having obtained in this territory.

ERROR, from a judgment in favor of plaintiff, to the First Judicial District Court, Santa Fe County. Judgment affirmed.

The facts are stated in the opinion of the court.

JOHN H. KNAEBEL for plaintiff in error.

The statute requires an affidavit only when the mere execution of a paper is denied. It does not require

a negative affidavit when the legal effect of the paper
is denied.   Craig v. Missouri, 4 Pet. 410.

This was a suit brought by the state of Missouri,
on a promissory note, and the only plea was non assump-
sit.   Chief Justice MARSHALL, in delivering the opinion
of the court, said: "Neither can it be doubted that the
plea of non assumpsit allowed the defendants to draw
in question at the trial the validity of the consideration
on which the note was given.   Everything which dis-
affirms the contract, everything which shows it to be
void, may be given in evidence on the general issue in
an action of assumpsit.   The defendants, therefore, were
at liberty to question the validity of the consideration
which was the foundation of the contract, and the con-
stitutionality of the law in which it originated."   Mason
v. Eldred, 6 Wall. 234; 7 Cranch, 565; 2 Hill, 480;
21 Wend. 317; 25 Wend. 373; 11 Id. 467; 7 Cow.
278; 8 S. M. & M. 332; 15 Johns. 230; 9 How. 230;
Van Epps v. Harrison, 5 Hill, 65, 66.

No statute or rule of court has ever been adopted
in this territory requiring a notice in aid of the general
issue in assumpsit, or as a condition precedent to the
introduction of the proofs which the common law per-
mits to be introduced under that plea.   Compiled
Laws, sec. 1907, enacted in 1878; id., 1920, refers
only to causes of action existing against the plaintiff.
Against the bank only a defense existed.   The court
properly received the evidence of W. C. Bishop by
means of which he procured the note.   The case in this
respect is even stronger than that of Ferguson v. Oliver,
8 Smede & Marshall, 332, 337, and cases cited.

It is doubtful whether the law of commercial paper
has been extended to promissory notes by the legislation
of this territory.   Compiled Laws, sections 1725, 1919.

The plaintiff was competent as a witness to im-
peach the note.   Act, 1880 (secs. 2076, 2077, 2078,
Comp. Laws.)

Any rule which formerly existed disqualifying an interested witness, either generally or specially, was abrogated by this statute. It was an absurd rule in its origin in England and it has long been rejected in the the English courts as well as generally in the courts of the several states. 2 Daniels Neg. Inst., p. 227, sec. 1217.

Bishop was guilty of gross fraud in the procurement of the instrument. The following authorities treat false representation of value, when made under such circumstances, as fraudulent. Veazie v. Williams, 8 How. 134, 154; Sanford v. Handy, 3 Wend. 260, 269; Van Epps v. Harrison, 5 Hill, 63, 70; Hepburn v. Dunlop, 1 Wheat. 188.

It is a well settled rule that, when even concededly negotiable paper is shown to be infected with fraud in its origin or to lack consideration, a plaintiff, claiming the immunities of a bona fide holder without notice and for value, is called upon to show affirmatively the circumstances under which he acquired the paper. The burden of proof shifts in such cases. First National Bank v. Green, 43 N. Y. 298, 301; McClintock v. Cummings, 2 McLean, 98; Bailey v. Bidwell, 13 M. & W. 73; Munroe v. Cooper, 5 Pick. 412; Smith v. Sac County, 11 Wall. 139; Stewart v. Lansing, 104 U. S. 509.

EUGENE A. FISKE for defendant in error.

The facts and representations relied on by defendant below, though knowingly and falsely made, are no defense, such representations as to value not being actionable, especially in this case where the land sold was easily accessible to defendant below, and he could, had he desired, have readily examined the land for himself. Wilder v. Decou, 18 Minn. 470; Griffin v. Farrier, 32 id. 474; Busterned v. Farrington (Minn.), 31 N. W. Rep. 36; Reynolds v. Palmer, 21 Fed. Rep.

433, 434, 435; Kimball v. Bangs (Mass.), 11 N. E.
Rep. 113, 114, and cases cited; Williams v. McFad-
den (Fla.), 1 Southern Rep. 618, 622, and cases cited
in note; Hemmer v. Cooper, 8 Allen (Mass.) 334;
Medbury v. Watson, 6 Metc. (Mass.) 259, 260; Curtis
v. Hurd, 30 Fed. Rep. 733; authorities in 2 Am.
Dec. 80, 81, and note; Holbrook v. Connor, 60 Me.
578; Banta v. Palmer, 47 Ill. 99; Tuck v. Downing,
76 Ill. 71, 80; Kennedy v. Richardson, 70 Ind. 532,
534; Saunders v. Hatterman, 37 Am. Dec. 696;
Slaughter v. Gerson, 13 Wall. 379; Parker v. Moulton,
114 Mass. 99, 100; Blease v. Garlington, 2 Otto, 1, 9.

The testimony nowhere shows or tends to show
that the land sold was not well worth the price paid by
Hickox, nor that he was in any manner damaged by
the transaction, yet false representations even when
amounting to fraud are not actionable unless they result
in injury to the party relying upon them, and such
damages must be shown with certainty. "Remote,
contingent, and conjectural losses will not be taken
into consideration." South. Dam. 594; 2 Am. Dec.
note p. 80; Munroe v. Gardner, 5 Am. Dec. 532;
Williams v. Hicks, 19 Am. Dec. 696; Ming v. Wol-
fork, 116 U. S. 599, 602, 603.

The testimony of the defendant below was incom-
petent, and introduced over the objection of the plain-
tiff below. Disregarding this testimony, there is no tes-
timony whatever that Bishop made any representations
whatever, fraudulent or otherwise. 2 Daniel, Neg. Inst.,
section 1217, and cases cited in notes 1, 2, 4, 5; Bank
of U. S. v. Dunn, 6 Pet. 51; Bank of Metropolis v.
Jones, 8 id. 12; U. S. v. Liffler, 11 id. 86; Scott v.
Lloyd, 12 id. 145; Henderson v. Anderson, 3 How. 73;
Saltmarsh v. Tuttle, 13 id. 229; Davis v. Brown, 94
U. S. 426, 427.

The defendant below will not be allowed to retain
the property and protect himself against the payment

of the purchase money.    Hyson v. Dunn, 41 Am. Dec. 101; Bartlett v. Palmer, 47 Ill. 99.

The defendant below by failing to plead specially under oath in this case that the note in question was not genuine and not duly executed, has, under our laws, admitted the genuineness and due execution of the note, and no evidence was, therefore, admissible in the case tending to show that the note was not duly executed because of fraud at its inception or want of consideration or other defect in its execution.    Sec. 1922, Comp. Laws, N. M. 1884; Smeltzer v. White, 2 Otto, 390, 392; Gray v. Fox, 1 Sax. N. J. 266.

Not only do the statutes of this territory require a special plea in such cases, but that is the law regardless of statutory provisions.    Hyson v. Dunn, 41 Am. Dec. 101; Huston v. Williams, 25 id. 86, and cases cited in note, page 96; Kerr v. Steman, 33 N. W. Rep. (Iowa) 655; Darnell v. Roland, 30 Ind. 346; Specht v. Allen, 6 Pac. Rep. 496, 497; Ross v. Braden, 26 Am. Dec. 445; Williams v. McFadden, 1 Southern Rep. 619; Abraham v. Gray, 14 Ark. 301, 304; Moss v. Riddle, 5 Cranch, 351; 3 Meyers' Fed. Dec., pp. 941, 957, 944; Bank of British N. A. v. Ellis, 6 Saw. C. C. 98, 99; Estep v. Armstrong, 11 Pac. Rep. 132, 719; Williams v. Hicks, 19 Am. Dec. 695; Davis v. Hooper, 24 Am. Dec. 752, 758, and note p. 753.

And want of consideration as between indorsee and maker can not be pleaded, there being no privity. Etheridge v. Gallaghen, 55 Miss. 464; 1 Daniel, Neg. Inst., section 174; 3 Meyers' Fed. Dec. pp. 941, 943; 6 Sawyer C. C. 98, 99.

At most, the case presented by the record, as interpreted by plaintiff in error, is inadequacy, not failure of consideration, and that is in itself no consideration. Staab v. Garcia, 1 Pac. Rep. (N. M.) 858.

"Actual possession of a negotiable instrument payable to bearer, or indorsed in blank, is plenary evidence

of title in the holder, * * * but if to an action on the same the defendant pleads that it was illegal in its inception, and that the plaintiff took it without value, the illegality being proved, the onus is cast upon the plaintiff to prove that he gave value." Collins v. Gilbert, 4 Otto, 753, 760, 761.

The uniform and well settled measure of damages in cases of deceit, such as this is claimed to be, is "the difference between the actual cash value" of the land "and its value if the alleged facts regarding it had been true." It would certainly puzzle the learned counsel for the plaintiff in error, and much more a jury, to determine what the difference was between the actual cash value of the land for which the note in question was part payment, and the value of the same land if it were true Bishop had paid $2,000 for it, instead of $1,000. Williams v. McFadden, 1. Southern Rep. (Fla.) 621, and cases cited; Morse v. Hutching, 102 Mass. 440, and cases cited.

There is a distinction made by the authorities between evidence offered under the general issue in assumpsit to show fraud and deceit, and evidence so offered under that issue to show failure of consideration for other causes than fraud. Moss v. Biddle, 5 Cranch, 351, and cases cited, ante.

BRINKER, J.—This was an action of assumpsit upon a negotiable promissory note, due thirty days after date, by the plaintiff, as indorsee for value before maturity, against the defendant as maker. The declaration alleged these facts, together with demand of payment, and a refusal by defendant. The defendant filed two pleas; the first was non assumpsit, the second set-off in the form of the common counts. To the first plea plaintiff added a similiter, and to the second filed a general replication. Upon these issues the cause was tried.

Upon the trial the plaintiff introduced in evidence the note sued on with its indorsements and the record of its protest, and also proved defendant's signature, and rested. Defendant then testified, over the objection of plaintiff, as follows: That he resided in Santa Fe, and carried on the business of jeweler on the plaza; he was acquainted with W. C. Bishop, and had been for two years; that during Bishop's residence in Santa Fe he made defendant's store his headquarters. On the evening of the eighth of June, Bishop went into defendant's store, and, in the presence of a workman and the partner of defendant, he told defendant that he had purchased a piece of property from Dr. Longwill, for which he had paid $2,000, and exhibited to defendant a deed, and told defendant that he was liable to be called away that night, or in a day or two, but very probably that night, and he wished to sell the property he had purchased very cheap; that he would sell it to defendant for $300 over his bargain. Defendant replied that he did not know anything about the property; that he had never seen it, and did not like to invest in anything he knew nothing about. Bishop assured him that the property was worth the value; that the title was good; and he would only transfer it to the defendant on the condition that it was taken at once; that the deed must be made that night, or there would be no trade. Defendant attempted to argue the matter with Bishop, and finally turned away with the statement that he did not want to buy anything that he did not know anything about. This was about 8 o'clock, or after, in the evening. Bishop said it was a good bargain, and that he would sell it at that price for the reason that he had to go away. "He then stated that as an object to influence me to make a trade he would take in trade a set of diamonds that he had admired so much, for $750. They were marked $775." Defendant then told Bishop that he didn't have the

money to pay for the balance.   Bishop answered that
it did not take so much money, as he had given a mort-
gage on it for $1,000, on which he had paid $50, leav-
ing a balance of $950 due on a reasonable length of
time, making payments easy.   Defendant said that
there was yet $600 difference, and he had no money to
pay for it, and he did not want to buy property with-
out seeing it.   Bishop said he would take defendant's
note on thirty days.   Defendant said he objected to
giving his note, on general principles, for the reason
that he did not want his paper offered for sale on the
street.   Bishop, as a further inducement, promised that
if defendant gave his note, he (Bishop) would keep it
himself, and positively agreed not to part with it.   On
this condition defendant told him he would make the
trade.   Defendant says:   "I made another objection,
and I told him I would not buy the property until I had
seen it, and asked him to wait until next morning to
see it, and he answered, 'No, Mr. Hickox; this must be
a trade now.   I will not give you time until morning;'
consequently it was a matter to decide at once.   Mr.
Bishop asked me to wait for twenty minutes (it was
then 8:30), and he would bring the deed.   He went out
and remained three-quarters of an hour—until 9:30.
He brought the deed, and we made the exchange.   I
gave him the note and delivered him the diamonds.   I
would not have sold the diamonds for $750."   Defend-
ant further stated that he had no knowledge concern-
ing the property, except that derived from Bishop;
that Bishop remained in town several days after the
trade; that defendant published a notice in the paper
two days after the trade, and continued it for thirty
days, concerning the note, but does not state what that
notice was.   On cross-examination defendant stated
that the diamonds cost him between $400 and $500 in
New York.   He also stated that he had not paid the
mortgage to Dr. Longwill.

There was evidence tending to show that the property was worth but $1,000; there was also evidence tending to show that it was worth $2,300. Dr. Longwill testified that he sold it to Bishop for $1,000. The deed, offered in evidence, from Longwill to Bishop, recited the consideration as $2,000. It was admitted on the trial that the conveyance from Bishop to the defendant recited a consideration of $2,300, and that such conveyance was made, by its terms, subject to a mortgage of $1,000, held by Longwill. This admission was made subject to the objection that the facts embraced were incompetent and immaterial on the trial. At the close of the testimony plaintiff asked the court to instruct the jury to find for the plaintiff. The defendant asked that the cause be submitted to the jury upon the evidence. The court instructed the jury that the evidence offered for the defendant was not sufficient to require the plaintiff to show that value was paid for the note by the plaintiff, and that they should return a verdict for the amount of the note, with interest at six per cent per annum from maturity, and with fees of protest. To this instruction defendant excepted. There was a verdict and judgment in accordance with the instruction; a motion for new trial made and overruled, and the defendant brings the case here by a writ of error.

The propriety of this instruction is the only matter presented for review. Defendant contends that the evidence shows that the note was obtained by fraud and imposition, and therefore the burden was on the plaintiff to show that it paid value for the note before maturity. In the case of Collins v. Gilbert, 94 U. S. 753, it is said: "Transferees of a negotiable instrument, such as a bill of exchange, or promissory note payable subsequent to its date, hold the instrument clothed with the presumption that it was negotiated for value, in the usual course of business, at the time of

its execution, and without notice of any equities between the prior parties to the instrument.   Possession of such an instrument payable to bearer or indorsed in blank, is prima facie evidence that the holder is the proper owner and lawful possessor of the same; and nothing short of fraud, not even gross negligence, is, unattended with mala fides, sufficient to overcome the effect of that evidence, or to invalidate the title of the holder supported by the presumption.   Apply that rule in a suit in the name of the transferee against the maker, and it is clear he has nothing to do in the opening of his case except to prove the signatures to the instrument, and introduce the same in evidence, as the instrument goes to the jury clothed with the presumption that the plaintiff became the holder of the same for value, at its date, in the usual course of business, without notice of anything to impeach his title.   Clothed as the instrument is with those presumptions, the plaintiff is not bound to introduce any evidence to show that he gave value for the same, until the other party has clearly proved that the consideration of the instrument was illegal, or that it was fraudulent in its inception, or that it had been lost or stolen before it came to the possession of the holder.''   A large number of authorities are cited in support of this position.   While it is true that the evidence of defendant tends to show that Bishop uttered a falsehood as to what the property cost him, the evidence wholly fails to show that defendant relied upon this statement solely, and was induced thereby to purchase the property.   He says the inducement was that Bishop would take as part payment diamonds at the price of $750, which cost between $400 and $500, and also retain the note himself.   In the case of Collins v. Gilbert, supra, the defendant had given to Collins & Company, the transferrers, an acceptance which they agreed to hold as security, but which they, in violation of their agreement, transferred to the plaintiff. The defendant, under a plea of the general issue, sought

to show this agreement, which was denied him, and on appeal the judgment was affirmed. So far as the agreement on the part of Bishop to hold the note is concerned, the ruling in the case cited is conclusive that it did not constitute fraud in the inception of this note. The only other inducement upon which defendant relied in the transaction was that by the sale of the diamonds he was enabled to make a profit of several hundred dollars. This certainly was not fraud to his prejudice. Fraud sufficient to put the holder of negotiable paper, before maturity and without notice, to the proof that he paid value for it, must be clearly proved, and must consist of such representations of fact as were calculated to and did mislead the maker to his injury, and concerning the truth of which the maker had no knowledge nor means of knowledge, and upon which he implicitly relied, and which constituted the inducement to the transaction. Such misrepresentations must be of such a character as would authorize a court of equity to annul the instrument in a direct proceeding for that purpose. In the case of Slaughter v. Gerson, 13 Wall. 379, the court say: "The misrepresentation which will vitiate a contract of sale and prevent a court of equity from aiding its enforcement must not only relate to a material matter constituting an inducement to the contract, but it must relate to a matter respecting which the complaining party did not possess at hand the means of knowledge, and it must be a representation upon which he relied, and by which he was actually misled, to his injury. A court of equity will not undertake, any more than a court of law, to relieve a party from the consequences of his own inattention and carelessness."

The evidence shows that defendant was unwilling to rely upon the statements of Bishop as to the value of the property, and insisted upon being allowed time in which to examine it for himself. The fair deduction from his testimony is that he yielded to Bishop's solici-

tations merely because Bishop informed him that if he did not take the property then, he could not get it at all, and the further fact that Bishop would take the diamonds. The property was situated in Santa Fe, both parties lived in Santa Fe, and from all that appears in evidence Bishop's grantor, to whom he claimed to have paid $2,000 for the property, was easily accessible; and, if defendant had exercised the prudence and caution necessary to relieve him from the imputation of negligence, he could have ascertained the fact without difficulty. This being true, he stands in no position to impeach the validity of negotiable paper which he has voluntarily put in circulation, and which has gone into the hands of a bona fide purchaser without notice. From this it is clear that there was not such fraud in the inception of the note as to cast the burden of showing that plaintiff had paid value for it upon plaintiff, and does not bring this case within the principle announced in Stewart v. Lansing, 104 U. S. 505, cited by plaintiff in error.

The doctrine that if there is a scintilla of evidence tending to support the cause of action or defense it must be left to the jury, has never obtained in this territory. Our courts have uniformly followed the rule of the federal courts, that, if the court is satisfied that, conceding all the facts to be true, which the jury might reasonably infer from the evidence, they would not warrant a particular verdict, the court may instruct the jury to that effect. Pleasants v. Fant, 22 Wall. 116; Railroad Co. v. Fraloff, 100 U. S. 24. As we have seen, the testimony in this case would not have justified the jury in finding that the note was procured by Bishop from defendant under such circumstances as constitute fraud. Therefore the instruction given was proper.

Finding no error in the record, the judgment should be affirmed, and it is so ordered.

LONG, C. J., and HENDERSON, J., concur.