(Superior Court of Cincinnati—Special Term.)

### A. J. SMITH v. THE CINCINNATI, HAMILTON & DAYTON RAILWAY COMPANY.

I.   By baggage is meant such articles of personal necessity or convenience as are usually carried by passengers for their personal use; it does not include merchandise or other valuables designed for other purposes such as a sale or the like.

2.   Equity will not interfere by injunction to require a railroad company to permit its passenger cars to be used for the transportation of merchandise as personal baggage, especially when such railroad company has provided for transportation of merchandise through its freight cars or through an express company, and does not hold itself out as such common carrier.

(Decided May, 1895.)

---

HUNT, J.

This is a motion to dissolve a temporary restraining order. By consent of parties it was submitted in oral testimony.

The petition alleges substantially that the defendant is a corporation under the laws of Ohio, and is the owner of and engaged in operating a certain line of steam railway between the cities of Cincinnati and Hamilton; that in the operation of said railway, the defendant acts as a common carrier; that the plaintiff is a resident of Hamilton; that for many years past the defendant has had in full force certain rules and regulations regarding the sale of commutation tickets between said cities, whereby said tickets are offered for sale to the parties at a certain price; that pursuant to said regulation the plaintiff has from month to month purchased from the defendant a commutation ticket between the two cities, and that on or about the first of March, 1895, the plaintiff purchased such a ticket, paying the stipulated price therefor, which ticket is still in full force and effect, and by its terms entitles the plaintiff to transportation between the two cities each and every day of the same month of March.

It further alleges that the plaintiff has been for a number of years engaged in the business of acting as agent for sundry people in the city of Hamilton, and of making daily trips to Cincinnati in order to transact for such people, any business that may be entrusted to plaintiff's care; that the plaintiff, about the year 1888, established such business, which was then a novelty, and has been engaged therein ever since, and has acquired a very large and valuable trade and good-will in the prosecution of the same; that such business consists principally in carrying of messages and purchasing of merchandise, either by sample or description, and any other service rendered by the plaintiff to those who may employ him which involve the elements of personal judgment and discretion of the plaintiff; that the defendant, on or about the sixteenth day of March, 1895, disregarding the rights of the plaintiff, under his monthly ticket as aforesaid, notified the plaintiff that he would no longer be allowed to travel upon the trains of the defendant company between the cities of Hamilton and Cincinnati, and claimed in said notice that plaintiff was carrying on a private express business; that pursuant to this notice the defendant did, on Friday, March the 22d, 1895, wrongfully refuse to allow the plaintiff to enter upon its railroad train, and forcibly prevented plaintiff from entering upon one of the cars of its said trains then about to start for Hamilton, although the defendant well knew that the plaintiff was the owner of said monthly ticket, which had not expired, but was in full force and effect; that by reason of said wrongful refusal the plaintiff was prevented from going to his home and attending to his business, and that if the defendant continues to refuse to allow the plaintiff to use its passenger trains as it threatens, the business of the plaintiff will be entirely broken up, the good will of the same destroyed the great and irreparable damage of the plaintiff. The equitable interference of the court is invoked to the end that the Cincinnati, Hamilton & Dayton Railroad Company and its officers, agents and employes may be restrained from in any way interfering with plaintiff's said business, or from refusing to check plaintiff's baggage, or from refusing to sell plaintiff commutation tickets upon the same terms and in the same way as offered to other passengers.

The answer of the defendant denies all the allegations of the petition except that the defendant is a corporation and a common carrier, and sets up a contract with the United States Express Company by which the defendant "agrees not to carry on any express business on its own account, nor to permit any of its agents or employes to carry on said business, nor to grant to any person or persons, corporation or association any express transportation or facilities whatever." There is a further allegation that the plaintiff for a number of years has been carrying on a pony express

business over the defendant's road, by carrying packages and parcels, wares and merchandise, which, in each instance, is express matter and not entitled to be carried as personal baggage under the rules and regulations of the railroad company; and that he has been notified to cease infringing upon the rights of the United States Express Company, but refused to desist from his unlawful use of the defendant's trains.

It is conceded that the plaintiff is a commutor on the defendant's road, and is engaged in a business somewhat difficult of designation, but consisting mainly of executing commissions in Cincinnati for sundry people in Hamilton, and in carrying merchandise purchased to Hamilton, and then deliver it to the customer with whom he has contracted.

The defendant recognizes the right of the plaintiff to carry with him his personal baggage, and the right to purchase and use monthly commutation tickets upon the same trains as other passengers, but expressly denies the right of the plaintiff to carry merchandise or any articles, wares or parcels free of charge on its passenger trains, which he has purchased in pursuance of his contract with the parties in Hamilton.

It is not necessary, for the purpose of this discussion, to determine the right of a railroad company to enter into a contract with an express company, giving such express company the exclusive privilege of carrying express matter on a line of railway, and compelling all parties desiring to transport express matter on that line of railway, to do so by such express company; nor to pass upon the question as to the validity of such a contract. It has been held however, in Express Cases, 117 U. S. 17, that railroad companies are not obliged, by the common law or by usage, to do more as express carriers than to provide the public at large with reasonable express accommodation, and that they need not, in the absence of a statute, furnish to independent express companies equal facilities for doing business upon their passenger trains.

The rules of the defendant company provide that (1) "one hundred and fifty pounds of baggage, consisting of wearing apparel, will be transported free on each full ticket; passengers desiring to have articles checked or transported, not properly classed as baggage, must be referred to the freight department or to the express company unless the baggage agent has special instructions from some con petent authority."

(28) "Baggage masters are not allowed to carry packages, money or other valuables for hire, or to receive any remuneration for transportation of baggage or other articles, except that a charge of twenty-five cents for fifty miles or less, at the rate of half a cent a mile for greater distances, may be charged for special care and attention," etc.

Angell, in discussing the law as to common carriers and the baggage of passengers, says: "The implied undertaking of the proprietors of stage coaches, railroads and steamboats, to carry in safety the baggage of passengers, is not limited, and cannot be extended beyond ordinary baggage such as a traveler usually carries with him for his personal convenience. It is never admitted to include merchandise." * * * Angell on the Law of Carriers, sec. 115.

Story in his work on Bailments, sec. 499, Ninth Edition, declares that "the doctrine seems now firmly established, both in England and America, that the responsibility of coach proprietors carrying passengers with their baggage, stands, as to the bagagge, upon the ordinary footing of common carriers. Mr. Bell has deduced this as the true modern doctrine on the subject. But by baggage we are to understand such articles of necessity or personal convenience as are usually carried by passengers for their personal use, and not merchandise or other valuables, although carried in the

trunks of passengers, which are not designed for any such use, but for other purposes, such as a sale and the like."

The Supreme Court of Ohio as early as in the case of Jones v. Voorhees, 10 Ohio, 145, (December Term, 1840), said that baggage and what is signified by the use of the term in the sense in which it is used in the books is perhaps nowhere precisely defined, though many people have expressed an opinion what it is not. "But it appears to us," continued the court, "that whatever forms the necessary appendages of the traveler may be legitimately considered as baggage, and placed in his trunk for conveyance."

In the First National Bank of Greenfield v. Marietta & Cincinnati R. R. Co., (20 Ohio St. 260), it was held that the defendant as a common carrier of passengers was not liable for the loss of money kept in the safe custody of a passenger, and which he carried, without notice to the defendant, for a purpose unconnected with the expenses of the journey, notwithstanding such loss was occasioned by the negligence of defendant's servants. Scott, J., in announcing the opinion of the court, laid down the rule as follows: "And this contract for the carriage of his person, necessarily included the wearing apparel which accompanied his person and such reasonable sum of money as might be in good faith carried with him for the expenses of the journey, together with all such articles, to a reasonable extent at least, as are ordinarily carried or worn upon the person for purposes of personal use, convenience, or ornament, and we agree with counsel for plaintiff that the contract also included the carriage of his baggage, delivered to the defendant as such to be carried, to the extent of an ordinary and reasonable wardrobe for one in his station of life, together with such articles as are usually found in the paraphernalia of a traveler."

In The Pennsylvania Company v. Miller & Co., 35 Ohio St. 541, the court says, the valise in question did not contain what is properly baggage. The contents consisted of samples of merchandise which the agent of the plaintiff carried with him to facilitate his business in making sales." The implied undertaking of the carrier to insure the safe carriage of baggage "did not, therefore, extend to these goods." But the court held, in the same opinion, that it did not relieve the defendant from all responsibility in regard to the safe carriage of the property. If voluntarily taken in charge, and finally placed in a warehouse for safe keeping, there would be the relation of an ordinary bailee.

In Railroad Company v. Fraloff, 100 U. S. 24, Mr. Justice Harlan says: "Whether the articles of wearing apparel in any particular case, constitute baggage, as the term is understood in the law, for which the carrier is responsible as the insurer, depends upon the inquiry whether they are such in quantity and value as passengers under like circumstances ordinarily or usually carry for personal use when traveling. To the extent, therefore, that the article carried by the passenger for his personal use exceeds in quantity and value such as are ordinarily and usually carried by the passengers of like station and pursuing like journeys, they are not baggage for which the carrier, by general law, is responsible as an insurer."

And in Hannibal R. R. Co. v. Swift, 12 Wall, 274, it is said: "It (the carrier) may refuse to receive on the passenger train property other than the baggage of the passenger, for a contract to carry the person only implies an undertaking to transport such a limited quantity of the articles as are ordinarily taken by travelers for their personal use and convenience; such quantity depending, of course, upon the station of the party, the object and length of the journey, and many other considerations."

This seems to be the rule in England as well. In Cahill v. London & Northwestern Railway Co., 100 Eng. Com. Law Rep. 154, Erle, C. J., in

announcing the opinion of the court (on p. 171) said: "I think it is most important, as well for the public as for the railroad companies, that the latter should be protected according to their reasonable regulations, and that they should be informed by the passengers of the contents of packages brought by them to be carried, if they are not of the description which by those regulations they are entitled to have carried free of charge. If the passenger wishes to carry merchandise, he should pay the company a fair and reasonable compensation for it * * * "When therefore, they give notice that they will, within certain limits, carry the passenger's luggage without any charge being made for the carriage, they impliedly gave notice that they will not carry merchandise gratis. * * *

Willes, J., says: "But I think that, when a passenger takes a ticket at the ordinary charge, he must, according to common sense and common experience, be taken to contract with the railway company for the carriage of himself and personal baggage only; and that he can no more extend the contract to the conveyance of a single package than of his entire worldly possessions."

In Phelps v. The London & Northwestern Ry. Co., 115 E. C. L. Rep. 321, the court say: "But the general habits and wants of mankind must be taken to be in the minds of the carrier when he receives the passenger for conveyance. * * When something is carried which is manifestly not for personal use, or that which a traveler would ordinarily carry for personal comfort or convenience, the carrier's responsibility ceases."

In Belfast & Ballymena, etc., Railway Company v. Keys, 9 Ho. of L. Cases, on p. 573, the Lord Chancellor (Lord Westbury) says: * * * "That the plaintiff intended to have goods carried in the carriage with him, and thus escape the obligation of paying for their carriage as merchandise; and under these circumstances there could not exist, in law or in reason, any contract between the plaintiff and the company touching these goods, upon the breach or default of the performance of which contract the plaintiff could have a right against the company. The plaintiff ought to know that there can be but one opinion entertained upon the merits and substance of the case."

Lord Wensleydale in concurring (p. 574) says: Now, the original contract certainly was that the plaintiff was not to pay anything for his luggage; it was included in this fare. But he was bound to pay for merchandise." * * * The true rule may be held to be that whatever the passenger takes with him for his personal use or convenience, according to the habits or wants of his particular station, either with reference to the individual necessities or the ultimate purpose of the journey, must be considered as personal luggage. It would follow, too, on the other hand, that what is carried for the purpose of business, such as merchandise or the like, or for larger or ulterior purposes, such as articles of furniture or household goods, would not come within the description of ordinary baggage, unless accepted as such by the carrier. Macrow v. the Great Western Railway Company, Law Rep. 6 Queen's Bench Cases, 612 (Cockburn C. J.)

It does not appear that the defendant holds itself out as a carrier of merchandise or express matter in any other form than it provides for the transporation of merchandise in freight cars or through the express company as alleged. If the defendant does not hold itself out as such carrier, it is not obliged to perform any such service. Pfister v. Cenrtal Pac. Ry. Co., 11 Pac. R., 686.

That merchandise is not baggage and entitled to be carried as such, and the company is not liable for its loss, is further recognized in Merrill v. Grinnell et al., 30 N. Y. 594; Metz v. California South. R. Co., 24 Pac. 610; Oakes v. Northern Pac. R. Co. 26 Pac. R. 320.

The question in the case, however, is greatly simplified by the admission of counsel for the plaintiff that a common carrier may make reasonable regulations and enforce the same; and the mere purchase of a ticket does not raise an implied contract to transport merchandise, and that if a passenger transports merchandise by virtue of the mere purchase of a ticket, and the merchandise is lost, the carrier is not liable.

It is insisted, however, by the counsel that while the defendant has a right to make reasonable rules and regulations in the conduct of its business, it cannot enforce the regulations as to particular commuters, and ignore its regulations as to all other commuters.

The case of Schofield v. Railway, 43 Ohio St. 571, is cited to the effect that a common carrier cannot discriminate between its customers. In that case the question arose as to discriminations in charges for freight, and the court held that where a lower rate is given by a common carrier to a favored shipper which is intended to give, and necessarily gives, an exclusive monopoly to the favored shipper, affecting the business and destroying the trade of other shippers, the latter has a right to require an equal rate for all under like circumstances. It is undoubtedly the case that a common carrier is a public carrier. The duty being public, the correlative right is public. The public right is common right, and a common right signifies a reasonably equal right.

The plaintiff contends that so long as the plaintiff merely exercises the rights accorded to other commuters, or so long as the defendant permits other commuters to exercise the right which it denies to the plaintiff, the defendant must, in view of the ruling in Schofield v. Railroad Co., 43 Ohio St. 571, be restrained from interfering with the person of plaintiff in carrying articles of merchandise on its passenger cars.

The evidence does not disclose that the defendant permits other commuters to exercise rights which it denies to the plaintiff. The plaintiff testifies that his business is a commission business; that no one knows it better than he does; that he comes to Cincinnati to buy and sell a great many goods from different houses in Cincinnati to the Hamilton people, both in the wholesale and retail line; that he brings the goods to Hamilton in various ways; that he ships over the road and by the Cincinnati, Hamilton & Dayton Freight Line, the United States Express Company, and also the Pan Handle and by the canal very largely during the seasons of the year when it is open; and that he takes the packages home with him in a valise on the train and in a shawl strap, and that he uses a valise or a shawl strap. (Plaintiff's testimony, pages 2, 3, 4).

The witness further testifies that he "sold goods of different kinds there (Hamilton) and has gained a great deal of commission in Cincinnati doing business. They would come down unsolicited. The houses here would want me to bring patronage to them, and it would amount to such that they felt that they were under obligations to me, and in doing that they paid me a commission for what I have done for them." (p 5.)

There is further testimony of the plaintiff that commuters have been in the habit of carrying sachels and parcels in the train other than wearing apparel, but there was no direct testimony that others were engaged in the same business with the plaintiff, and on page 24 the witness says in reply to the question: "Do you know of anybody else engaged in that business to-day on this line of railroad? A. I don't know, and I don't know what business he is referring to. I am doing a brokerage business in Cincinnati, and I can answer for nobody but myself. I buy goods here for a great many people" ( p. 35.)

The plaintiff further testifies that he sometimes had more luggage or

parcels, or more goods on the car than he could carry in one load in his arms; that he sometimes had to make more than one trip from the car to and fro to get the goods off the car, and at times he had parcels for as many as eight or ten different people in one telescope for which he received compensation. (Ex., pp. 31, 32).

The position of the plaintiff is stated by his counsel as follows: "It is claimed in this case that we are being discriminated against, and the very basis of this suit is that we are being discriminated against; but it is not claimed in the suit, that we are discriminated against because the company allows somebody else to engage in the particular business that Mr. Smith is engaged in. My contention is partly that Mr. Smith is practically the only man that is engaged in this sort of business. It is a business peculiar of itself. He is discriminated against in that he can not carry his satchel when other people can carry their satchels, their valises and wares." (p. 25.)

The defendant expressly disavows any intention to discriminate against the plaintiff in any manner by refusing to sell him railway tickets, or to ride upon its trains as any other passenger; but insists that it has the right to exclude from its passenger car all merchandise or wares that do not come within the term of baggage as defined by the law.

The court is satisfied, from a careful examination of the authorities, as well as a patient review of all the testimony, that the plaintiff is not in a position to invoke the equitable interference of the court.

The motion is granted.

Ramsey, Maxwell & Ramsey, for the motion.

Lowrey Jackson, contra.