## THE MORRO CASTLE.

(District Court, S. D. New York. March 18, 1909.)

Shipping (§ 167*)—Carriage of Passengers—Loss of Baggage.

Damage to passengers' baggage on a steamer through negligence upon reaching Nassau, West Indies. The ticket provided that the limit of recovery should be $100 for each person. *Held*, that the limitation was valid and should be sustained.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 553; Dec. Dig. § 167.*]

(Syllabus by the Judge.)

Blandy, Mooney & Shipman, for libellants.
Wing, Putnam & Burlingham, for claimant.

ADAMS, District Judge. These actions were brought by Rawson Underhill and Jessie C. Underhill against the steamship Morro Castle,

of the New York and Cuba Mail Steamship Company, to recover the damages, alleged to amount to respectively $500 and $960, caused by the negligence of the steamer in allowing the baggage of the libellants, and of their son, Rawson Underhill, Jr., to fall overboard while being transferred from the said steamer to a smaller one for the purpose of being taken ashore at the port of Nassau, West Indies, early in February, 1908. The libellants paid for first class passages from New York to the said port, obtaining one ticket for the three persons, and it was at the termination of the passage that the injury occurred.

The answer denied any negligence but it has since been conceded that the libellants have established their contention in such respect and the defense now relied upon is a provision contained in the passenger ticket as follows:

"(b) Twenty cubic feet of baggage is allowed to each passenger, provided said baggage is delivered on board one hour before sailing, marked clearly with owner's name and destination; but the Company is not to be held liable or responsible for any loss of or damage to the said baggage or any part thereof, or resulting from the delay in the delivery thereof, unless the said loss or damage or delay is proved to have occurred from the negligence of the Company or its servants; nor in any event shall the Company be held liable or responsible, nor shall any demand be made upon it because of such loss, damage or delay beyond the sum of one hundred dollars in case of a first class passenger or fifty dollars in case of an intermediate or second class passenger, at which sum the baggage of the passenger is hereby valued, unless at the time of delivery thereof to the Company notice is given to the Company in writing of the character and true value thereof, and one per cent. of the excess of said value over one hundred dollars or fifty dollars, as the case may be, is paid to the Company as compensation for the additional risk incurred."

The answer, after quoting the above limitation, alleges:

"As the claimant is informed and believes, on or about February 3rd, 1908, while the Morro Castle was in the port of Nassau, and the passengers' baggage was being discharged from the steamship onto a tug, a net sling in which the libellant's baggage was being lowered struck the rail of the tug and became unhooked and the contents of the sling fell into the water and, as the claimant is informed, were more or less damaged by water.

No notice whatever was given by or in behalf of the passenger to the claimant or its agents of the character and true value of the baggage brought on board by the libellant, nor was any excess payment made for the carriage of such baggage as provided in said contract of carriage.

And the claimant alleges that, if it was guilty of any negligence causing or contributing to the damage of said baggage, which it denies, nevertheless the extent of its liability is expressly limited by the terms of said contract of carriage to the sum of one hundred dollars. * * *"

The question to be determined, therefore, is whether the limitation is valid.

The testimony shows the tickets were sold to Mr. Underhill and that at the time of the purchase of the ticket, he did not read it over nor was his attention called to its terms. His own testimony on this point was that he did not read any printed parts of the ticket, which covered the passage of the libellants and their son. He said:

"Q. Are you in the habit of looking at the tickets you buy? A. I never do, except to see what they say regarding staterooms.

Q. I show you a form of ticket (showing ticket to witness) which was sold you, the original having been lost, according to the proofs, after it was turned in. It had, according to the testimony, got into a basket with a lot of others

to be sent up to be filed away, and was thrown away by a cleaner. You did not bother reading the conditions to which the contract was subject? A. No sir, I never have, and have done a great deal of traveling.

Q You did not think it was worth while to bother with that sort of stuff? A. No.

Q. But you saw it was there? A. Yes.

Q. Why did you not read it? A. Life's too short.

Q. You are not a man who generally pleads the 'baby act' on a contract? A. Not by a darn sight.

Q. Here is a ticket (showing ticket to witness) which at the top says: 'Notice. your attention is especially directed to the conditions of this contract.' Assuming that this is the same form as the one that you had, would that notice have any effect on you? A. Not a bit.

Q. As showing the terms and conditions of the contract? A. No.

Q. You make it a practice to shorten trouble by not looking at these things? A. Yes, sir.

Q. You know they are there, but you do not pay any attention to them? A. I know there is something there.

Q. You have been to Europe many times, I suppose, and are familiar with the forms of tickets, and that is your invariable rule not to look at them? A. I have never done so."

The steamer, with the passengers on board, left New York January 31, 1908 at 3:10 P. M. The libellants had with them two trunks a-piece, a steamer trunk for their stateroom, two dress suit cases, a hat box, two golf bags and a soiled clothes bag. They were going on a pleasure trip and provided themselves with suitable clothing for use at a fashionable winter resort, where high prices doubtless prevailed. There is no dispute that the injury to the value of the baggage was far in excess of the limitation.

The libellants claim to be entitled to the full amount of their injury by reason of the circumstances and because (1) the provisions of the ticket were not brought to their attention and (2) such provisions are unreasonable, against public policy and void.

The libellants urge a number of cases to sustain their contentions, viz.: The Bourgogne, 144 Fed. 781, 75 C. C. A. 647; Wheeler v. Oceanic Steam Nav. Co., 125 N. Y. 155, 26 N. E. 248, 21 Am. St. Rep. 729; Railroad Company v. Fraloff, 100 U. S. 24, 25 L. Ed. 531; Smith v. North German Lloyd, 151 Fed. 222, 80 C. C. A. 574; Weinberger v. Compagnie Générale Transatlantique (D. C.) 146 Fed. 516; The New England (D. C.) 110 Fed. 415; The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039; The Kensington, 183 U. S. 263, 22 Sup. Ct. 102, 46 L. Ed. 190; Bradley v. Lehigh Valley R. Co., 153 Fed. 350, 82 C. C. A. 426. Without analyzing these authorities here, it seems sufficient to say that none of them covers the situation now under consideration, or entitles the libellants to recover the full amount of their loss. Here, while there was no verbal notice at the time of the purchase of the ticket, there was ample opportunity for the libellants to have ascertained what the contract was which the steamer was willing to make. The limitation was contained in the body of the contract. It cannot be deemed a mere condition of passage or notice. The limitation was an essential part of the contract and does not appear to have been unreasonable.

Mr. Underhill said on cross-examination:

"Q. The question is, whether you have ever taken the trouble, in your business experience and your experience as a traveler, to ascertain the fact that

passenger tickets usually contain fixed, if not invariable, clauses limiting liability in regard to baggage to a certain number of dollars? A. No, I did not, if I had known that I would have insured my stuff.

Q. You certainly had ample opportunity to observe that in this ticket which you bought ten days before you sailed? A. Yes, if I looked at the ticket. I did not care for anything except for my rooms and that the ticket was paid for."

It would not be reasonable to expect the steamship to pay for damage, even if negligently caused, beyond the amount for which she was willing to be responsible in conformity with the contract of passage. There was no information withheld from the libellants; they simply failed to avail themselves of ample opportunity to advise themselves of a reasonable limitation of value. It was said by Mr. Underhill that if he had known of the limitation, he would have insured his goods, meaning, doubtless, that he would have effected insurance with usual mercantile underwriters, but he not only failed to resort to that method of securing indemnity but he neglected to utilize that which was already at hand, that is, the responsibility of the steamer, which would have insured the passengers for one per cent. It appears that the libellants expect the steamer to act as insurer without consideration.

The limitation here was clearly expressed in legible type of a fair (minion) size, and it could only have been carelessness or indifference on the libellants' part which prevented them from protecting themselves in a proper manner if they did not wish to encounter the risk of loss. There was no signed agreement here as in Bachman v. Clyde S. S. Co., 152 Fed. 403, 81 C. C. A. 529, but it was said in that case (page 404 of 152 Fed., and page 530 of 81 C. C. A.):

"Even in the case of a mere notice, however, 'it is undoubtedly competent for carriers of passengers, by specific regulations, distinctly brought to the knowledge of the passenger, which are reasonable in their character and not inconsistent with any statute or their duties to the public, to protect themselves against liability, as insurers, for baggage exceeding a fixed amount in value, except upon additional compensation, proportioned to the risk.' Railroad v. Fraloff, 100 U. S. 24–27, 25 L. Ed. 531."

I conclude that the limitation should be sustained. There will be a decree for the libellants for $100, in each case, with interest.