## SAUNDERS v. SOUTHERN RY. CO.

(Circuit Court of Appeals, Sixth Circuit.  February 17, 1904.)

### No. 1,235.

1. CARRIERS—LOSS OF BAGGAGE—CONTRACT LIMITING LIABILITY.

   It is the settled law that a common carrier may contract for a reasonable limitation of its common-law liability for loss or damage to either freight or baggage not resulting from its own negligence or that of its servants.

2. SAME—CONTRACT IMPLIED FROM SALE OF TICKET—BAGGAGE.

   A contract to carry without additional compensation a reasonable amount of personal baggage is implied from the sale of a ticket by a carrier to a passenger, but such implied obligation is limited to such articles of personal baggage as are reasonably required for the comfort or convenience of the passenger and his family.

3. SAME.

   A passenger is required to act in good faith, and if he obtains carriage on his ticket as personal baggage of merchandise or articles not properly such baggage, without disclosing the fact, the carrier will not be liable for their loss or damage; but if such articles are accepted without deception by the passenger, and with notice, the liability will arise to safely carry and deliver.

4. SAME—CONTRACT LIMITING LIABILITY.

   The general liability of a carrier for the baggage of a passenger is that of an insurer, but this common-law liability may be limited by an agreement, fair and reasonable between the carrier and passenger, against all loss and damage not resulting from the negligence of the carrier or its servants.  Such a contract, however, must have been accepted by the passenger with knowledge of its terms, and such knowledge will not be implied.

5. SAME—ARTICLES NOT PERSONAL BAGGAGE—THEATRICAL PROPERTIES.

   Stage costumes, scenery, etc., making up the paraphernalia of a traveling theatrical company, do not constitute personal baggage which a carrier impliedly contracts to carry without compensation on the tickets of the company as passengers, unless a general custom to do so is shown; and they must be shipped as freight under the customary regulations, or by special arrangement therefor.

6. SAME—CONTRACT RELEASING FROM LIABILITY—QUESTION FOR JURY.

   Plaintiff, who was manager of a theatrical company of 14 members, through his advance agent, applied to defendant railroad company for rates for his company, baggage, and stage properties from Birmingham, Ala., to Lexington, Ky., by way of three other cities, where he desired to stop.  He was told that by buying 18 tickets at company rates he would be entitled to a car for the baggage and other properties free, which offer was accepted.  A week later plaintiff bought the tickets from there to Atlanta, and was given the car.  A regulation of defendant and other southern railroads required the purchaser in such cases to sign a release exempting defendant from liability for "any loss or damage" to baggage. Neither plaintiff nor his agent was informed of such regulation, but his property man, after loading the car, was required to and did sign such release without his knowledge.  At Atlanta plaintiff again bought tickets through to Lexington, with stop-over privilege at the two other cities.  He was not then told of the regulation, but was later asked to sign the release, and refused.  His car was taken on, however, until the time he left the

¶ 1. Limitations of liability of carriers for injuries to passengers and for baggage, see note to Clark v. Geer, 32 C. C. A. 301.

¶ 4. See Carriers, vol. 9, Cent. Dig. §§ 1544, 1548, 1549.

last point before reaching Lexington, where, on his refusal to sign the release, the car was held, and caused him to lose his engagement at Lexington. After 12 hours he signed the release under protest, and the car was forwarded. *Held*, that plaintiff was not bound by the regulation unless he had notice of it before the contract was completed by his purchase of tickets; that, in the absence of actual notice, it could not be imputed to him through his property man; that it might be presumed from the generality of the regulation, the length of time it had been in force, and his experience in the business, but that under the evidence such presumption could not be drawn as matter of law, but was a question for the jury.

7. SAME—CONSTRUCTION OF RELEASE.

A contract releasing a carrier from liability "for loss or damage to baggage" does not in terms release it from liability for negligence, and, being capable of a construction which will render it legal, will be so construed, and *held* to exclude loss or damage so arising.

In Error to the Circuit Court of the United States for the Eastern District of Tennessee.

This was an action to recover damages for breach of a contract for the carriage of the Tim Murphy Theatrical Troupe, their baggage, scenery, stage properties, etc., from Atlanta, Ga., to Lexington, Ky., with the privilege of stopping over at Chattanooga and Knoxville. There was a plea of not guilty. The plaintiff was proprietor and manager of a traveling theatrical troupe, consisting in all of 14 persons. The troupe had been traveling in Texas, Louisiana, and Mississippi, and from a point in Mississippi expected to go to Birmingham, Ala.; thence to Atlanta, Chattanooga, Knoxville, and Lexington, Ky.

The bill of exceptions states, among other things, that the following facts were proven:

"Plaintiff's advance agent was a man by the name of Coltman, who traveled about one week in advance of the company, and whose duty it was to contract for railroad rates, and fix terms with opera-house owners or managers, and to arrange rates and terms with transfer companies, and see to the advertising. When Coltman reached Birmingham, about one week in advance of plaintiff's company, in 1902, he opened negotiations with Freeman, who was the local passenger agent of defendant company at that point. Freeman replied that he would communicate with the head office of the company, which, for this territory, was the office of Assistant General Passenger Agent Benscoter, at Chattanooga, Tenn. This Freeman did, and reported to Coltman, giving rates of transportation for a company of eighteen persons, with the privilege of stopping over at Atlanta, Chattanooga, and Knoxville, and ending at Lexington, Ky., which carried the right of a separate car, without extra charge, for baggage, stage scenery, and effects. At the same time Freeman gave Coltman a schedule of trains for the movement of his company. This baggage and stage scenery consisted of a lot of trunks containing the personal baggage of the individuals, fourteen persons in all, composing the troupe, and also stage scenery and effects, embracing drop curtains, furniture for the stage, and the necessary tools and stage paraphernalia usually used by theatrical companies.

"The sale of a ticket for eighteen persons carried with it, as above shown, the privilege of the baggage car for said baggage and stage effects, without extra charge, but a ticket for a less number of persons than eighteen would not carry that privilege and would subject the members to excess baggage charges if any individual had more than 200 pounds of baggage or scenery in addition thereto. This excess would apply to all personal baggage for each individual containing over 200 pounds. Ordinarily individual passengers are entitled to 150 pounds of personal baggage, but individuals of theatrical troupes are entitled to personal baggage of 200 pounds to the individual on railroads. By the terms of transportation for said company given by said Freeman to said Coltman said baggage car was to be transported on the same train with plaintiff company, or in a train in advance; and the dates of performance at Atlanta, Chattanooga, Knoxville, and Lexington were made

known to Freeman, and the baggage car and company were to reach those points in time for those dates.

"In accordance with the arrangements thus made between Coltman and Freeman, the defendant's agent, Benscoter, issued to each of the company's agents at Birmingham, Atlanta, Chattanooga, and Knoxville a document called an 'Itinerary,' worded as follows:

" 'Chattanooga, Tenn., Jan. 25, 1902.

" 'Tim Murphy Theatrical Company.

" 'Mr. A. B. Freeman, T. P. A., Birmingham; Mr. C. P. Jackson, T. P. A., Birmingham; Mr. J. C. Lusk, T. P. A,. Chattanooga; Mr. J. L. Meek, T. P. A., Knoxville; Mr. J. J. Gray, T. P. A., Meridian; Mr. F. H. Hart, B. A., Meridian; Mr. L. J. Johnson, T. A., Birmingham; Mr. J. J. Mullins, B. A., Birmingham; Mr. J. E. Shipley, C. T. A., Chattanooga; Mr. J. H. Waite, D. T. A., Chattanooga; Mr. W. H. Brown, B. A., Chattanooga; Mr. J. T. Moffett, T. A., Knoxville; Mr. J. M. Gore, B. A., Knoxville:

" 'Gentlemen—Tim Murphy Theatrical Company, eighteen or more people requiring one fifty-foot baggage car for their scenery, will move as follows:

| | | | | |
|---|---|---|---|---|
| Jan. 31. | Lv. | Meridian | 6.40 a. m. | |
| | Ar. | Birmingham | 12.25 noon | 153 miles |
| Feb. 1. | Lv. | Birmingham | 6.00 a. m. | |
| | Ar. | Atlanta | 11.30 a. m. | 107 miles |
| Feb. 2. | Lv. | Atlanta | 7.55 a. m. | |
| | Ar. | Chattanooga | 1.00 p. m. | 138 miles |
| Feb. 4. | Lv. | Chattanooga | 9.55 a. m. | |
| | Ar. | Knoxville | 1.10 p. m. | 111 miles |
| Feb. 5. | Lv. | Knoxville | 9.50 a. m. | |
| | Ar. | Lexington | 5.51 p. m. | 211 miles |

" 'Baggage car to be handled, Chattanooga to Knoxville, on No. 12, Feb. 4th, and from Knoxville to Harriman Jct. on freight train No. 73, Feb. 5th, if No. 73 on time, that date.

" 'The advance agent has been ticketed through to Lexington, and you may sell the company, eighteen or more people, on one ticket, at rate of 2 cents per mile per capita, which is to cover movement of baggage car.

" 'Usual release should be taken on regular theatrical baggage, Form 239. Agents will be held personally responsible for these releases.

" 'Yours truly,                    C. A. Benscoter, A. G. P. A.

" 'Mr. Dodson, Mr. Reddle, Mr. Frazier, Mr. Heyden, Mr. Vaughan, Mr. Ewing, Mr. Rinearson, Mr. Harwick, Mr. Taylor.

" 'Transportation department please note and protect movement as outlined above. This confirms my joint telegram 23d. inst. Please acknowledge receipt.' "

This "itinerary" was issued at the request of Freeman, the Birmingham agent of the railroad company, who at the same time informed Benscoter that Coltman would call and see him on reaching Chattanooga. It was not shown that Coltman did do so, or that he ever had any conference with Benscoter. Coltman reported to plaintiff the transaction with Freeman, and "recommended the purchase of the ticket for eighteen persons, with said baggage car privileges." He was himself furnished with transportation to Lexington as one of the plaintiff's company, and went in advance about one week, and did not himself buy any ticket for the company. Neither was it shown that Coltman was ever notified of any requirement that a release should be executed for the company's stage baggage, scenery, etc., nor that he was ever furnished with or saw the "itinerary," as above set out, though it was shown that he was given a "schedule of trains for the movement of his company." What this "schedule" was, does not further appear. Plaintiff himself, a week later, bought at Birmingham a solid ticket for 18 persons from Birmingham to Atlanta. But nothing was then said to him about signing a release as a condition of getting special transportation for the company's baggage. After a performance at Birmingham the baggage and company paraphernalia was taken to the depot by the company's "property man," one Davenport, and was by him loaded into a baggage car furnished for use of the troupe. He was then asked to sign, and did sign, a release in the following words:

128 F.—2

"Form 239.

"Southern Railway, Birmingham, Alabama, Station, Feb. 1, 1902.

"Theatrical Baggage Release.

"In consideration of the carriage upon special conditions by the Southern Railway Company, and connecting lines, car, baggage and scenery, four pieces checked Tim Murphy Theatrical Company, from Birmingham, Alabama, to Atlanta, Georgia, the undersigned, acting as property man for the said Tim Murphy Theatrical Company, hereby releases and forever discharges the Central of Georgia Railway Company and other transportation companies which together compose the through line between the points above named from all liability for any damage or loss which may happen to baggage while in their possession.                                                                Ed. Davenport."

To induce him to do so, he was shown the itinerary set out above, and his attention called to the necessity of doing so, and told that the baggage would not be forwarded unless he did sign. On reaching Atlanta, and before the performance the same night, the plaintiff bought another solid ticket for 18 persons to Lexington, Ky., with right to stop over at Chattanooga and Knoxville. Nothing was said to him about any release, and he knew nothing of the demand made on Davenport at Birmingham, or that he had signed the release set out, nor had he then been furnished with or shown the "itinerary" issued by Benscoter. After the performance, the company's baggage, scenery, etc., were taken charge of as usual by Davenport,· and loaded in a car furnished for that purpose. He was then asked to sign a release similar to the one above set out. He thereupon telephoned plaintiff, who had, earlier in the evening, refused to sign one, and was directed not to sign. The baggage was, however, forwarded to Chattanooga without a release. At Chattanooga a like demand was made and refused, but the car forwarded to Knoxville. At Knoxville, after the car had been loaded and locked, a demand was again made that Davenport should sign a release in form like the one set out above, and again told that the baggage would not be forwarded unless he did. This he refused to do. Plaintiff was then called up over the telephone at his hotel, but he refused to allow the release to be signed. It was presented to plaintiff himself the next morning when he went to the station to take the passenger train with his company. He thereupon took the release, and wrote on the face of it the words, "Provided the baggage, etc., is delivered on time and in good order," and signed the paper. The defendant's agents then informed him that they would not "forward the baggage with such a proviso in it." The personal baggage of the members of the company, consisting of five trunks, was, however, sent on by the morning train, but the troupe and company baggage remained in Knoxville until that night, when plaintiff signed the release, under protest, without any proviso, and the company, with its baggage, etc., was carried to Lexington, reaching that place too late for the performance as advertised.

The evidence further showed that an association of railroad companies, operating lines south of the Ohio, known as the "Southeastern Railroad Association," had made rules and regulations for the transportation of regularly organized theatrical companies, concert and opera companies, glee and other clubs, at excursion rates. The defendant belonged to this association. By this agreement parties of from 10 to 24 persons traveling on one ticket were carried for two cents per mile, with free passage for an advance agent. These regulations were embodied in a circular issued to the agents of each company, and they were required to observe the conditions in the sale of party tickets. There was also evidence showing that the sale of theatrical tickets had long been made under special conditions as to price and transportation of company property, and that such baggage was not personal apparel, but stage dress, furniture, scenery, etc., which required special handling; that the loading and unloading was done by the "property man" of the company; and that the scenery, especially, was cumbersome, being sometimes in rolls of 30 to 50 feet in length, and sometimes inclosed between long, thin boards. The evidence also tended to show that the agents and managers of such companies were experienced men, and widely acquainted with the regulations of carriers in respect to the handling of such business, and that the rules and regulations

of the Southern Passenger Association were widely known among people interested in such matters, and had been long enforced, without discrimination. It was also shown that it was the business custom of the defendant to furnish agents and baggage masters with these regulations, and that passenger agents customarily referred to the itinerary when tickets were called for, and showed same to the person applying for tickets. It was also shown that it was not customary for the agent selling the ticket to specially refer to the necessity for executing a release, being regarded as a matter for the baggage master, to whom application is necessarily made for transportation of such articles. This agreement or arrangement for carrying such companies at reduced rates also prescribed the terms upon which company or professional baggage, scenery, furniture, etc., might be carried, and permitted to companies of 18 to 35 persons traveling on one solid ticket the use of a "special baggage car to be transported without additional charge," but that the owner or manager or some authorized agent of the company so moving should sign "a release of liability for any scenery, properties, live stock, or other articles which do not consist of baggage exclusively." Further facts appear in the opinion. Upon the conclusion of all the evidence the court instructed the jury to find for the defendant.

Jerome Templeton, for plaintiff in error.
Jourohnon, Welcker & Hudson, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

LURTON, Circuit Judge, after making the foregoing statement of the case, delivered the opinion of the court.

1. It is well settled that a common carrier may contract for a reasonable limitation of its common-law liability for loss or damage to either freight or baggage not resulting from its own negligence or that of its servants. New Jersey Nav. Co. v. Merchants' Bank, 6 How. 344, 12 L. Ed. 465; York Co. v. Central Rd., 3 Wall. 107, 18 L. Ed. 170; Mich. Cent. Rd. v. Mfg. Co., 16 Wall. 318, 21 L. Ed. 297; Railroad Co. v. Lockwood, 17 Wall. 357, 21 L. Ed. 627; Express Co. v. Caldwell, 21 Wall. 264, 22 L. Ed. 556; Railroad Co. v. Pratt, 22 Wall. 123, 22 L. Ed. 827; Bank v. Adams Ex. Co., 93 U. S. 174, 23 L. Ed. 872; Railway Co. v. Stevens, 95 U. S. 655, 24 L. Ed. 535; Railroad Co. v. Fraloff, 100 U. S. 24, 25 L. Ed. 531; Hart v. Penn. Rd. Co., 112 U. S. 331, 338, 5 Sup. Ct. 151, 28 L. Ed. 717; Liverpool Steam Co. v. Phenix Co., 129 U. S. 397, 441, 9 Sup. Ct. 469, 32 L. Ed. 788; Constable v. National Steamship Co., 154 U. S. 51, 14 Sup. Ct. 1062, 38 L. Ed. 903. This is also the doctrine as recognized by the courts of Tennessee. Railroad v. Gilbert, 88 Tenn. 430, 12 S. W. 1018; Railroad v. Dies, 91 Tenn. 177, 18 S. W. 266, 30 Am. St. Rep. 871.

2. A contract to carry without additional compensation a reasonable amount of personal baggage is implied from the sale of a ticket. 3 Ency. Am. & Eng. Law, 543; Angell on Carriers, § 115; Isaacson v. N. Y. Central Rd., 94 N. Y. 278, 46 Am. Rep. 142; Bomar v. Maxwell, 9 Humph. 622, 624, 51 Am. Dec. 682; Miss. Cent. Rd. Co. v. Kennedy, 41 Miss. 671.

3. But this implied obligation is limited to such articles of personal baggage as are reasonably required for the comfort or convenience of the passenger and his family, having regard to the circumstances of the traveler, character of the journey, etc. Hannibal Railroad v. Swift, 12 Wall. 272, 20 L. Ed. 423; Railroad v. Fraloff, 100 U.'S. 24, 25 L. Ed.

531; Bomar v. Maxwell, 9 Humph. 622, 51 Am. Dec. 682; Coward v. E. T. & V. Rd., 16 Lea, 225, 57 Am. Rep. 227.

4. The traveler must exercise good faith, and, if he obtain carriage as baggage of merchandise or articles not within the category of ordinary personal baggage, without disclosing the fact, the carrier will not be liable for their loss or damage. Humphreys v. Perry, 148 U. S. 627, 13 Sup. Ct. 711, 37 L. Ed. 587; Bomar v. Maxwell, 9 Humph. 622, 51 Am. Dec. 682. But if articles or merchandise not personal baggage be accepted, without deception by the passenger, and with notice, the liability will arise to safely carry and deliver. Stoneman v. Erie Ry. Co., 52 N. Y. 429; Millard v. M. K. & T. R. Co., 86 N. Y. 441; Hannibal Rd. v. Swift, 12 Wall. 262, 20 L. Ed. 423.

5. The general liability for the baggage of a passenger is that of an insurer. But this common-law obligation may be limited by an agreement, fair and reasonable, between the carrier and passenger against all loss and damage not resulting from the negligence of the carrier and his servants. 3 Thompson on Negligence, § 3455. The rule in respect to baggage is not different from that in relation to freight.

6. When a carrier desires to limit its common-law responsibility, there is nothing unreasonable in requiring that the extent of the exoneration shall be plainly declared, and brought to the attention of its customer in such way as to afford opportunity for acceptance or rejection.

In New Jersey Nav. Co. v. Merchants' Bank, 6 How. 344, 382, 12 L. Ed. 465, it is said:

"The exemption from these duties should not depend upon implication or inference founded on doubtful and conflicting evidence, but should be specific and certain, leaving no room for controversy between the parties."

In N. Y. Central Rd. Co. v. Fraloff, 100 U. S. 24, 27, 25 L. Ed. 531, the court said:

"It is undoubtedly competent to carriers of passengers, by specific regulations, distinctly brought to the knowledge of the passenger, which are reasonable in their character, and not inconsistent with any statute, or their duties to the public, to protect themselves against liability, as insurers, for baggage exceeding a fixed amount in value, except upon additional compensation proportioned to the risk."

In the case of The Majestic, 166 U. S. 375, 17 Sup. Ct. 597, 41 L. Ed. 1039, a ticket containing a limitation of liability for baggage printed upon its back was held to be a mere notice, and not a part of the contract, and not obligatory upon the passenger as matter of law, when it appeared that attention had not been called to the conditions, and the passenger was without actual knowledge until after the journey had begun. See, also, Rawson v. The Penn. Rd., 48 N. Y. 212, 8 Am. Rep. 543; 3 Thompson on Negligence, §§ 3455–3457, 3459.

7. It follows from the foregoing that a carrier is not obliged to carry goods, articles, furniture, etc., or anything not fairly to be regarded as personal baggage reasonably required for the convenience and comfort of the passenger as baggage, and may refuse to carry such articles except as freight, and under the customary methods for carrying freight. If, therefore, the traveler wish to have such goods carried as if personal baggage, he can only do so by complying with the rea-

sonable terms and conditions imposed. 3 Ency. Am. & Eng. Law, 539, and cases cited.

8. That stage costumes, scenery, furniture, etc., making up the paraphernalia of a traveling theatrical company do not constitute the personal baggage which a carrier impliedly contracts to carry without additional compensation, and along with the passenger, must be conceded. 3 Thomp. Neg. § 3417; Oakes v. N. P. Rd. Co., 20 Or. 392, 26 Pac. 230, 12 L. R. A. 318, 23 Am. St. Rep. 126. If, therefore, the plaintiff desired to have this company outfit carried with his troupe as if personal baggage, he was under obligation to either specially arrange for their carriage, or rely upon and comply with the reasonable regulations of the carrier in respect of such theatrical baggage, etc. It was therefore competent to prove the custom of railroad companies in regard to the carriage of such articles, and any regulation which had been adopted in that respect. For the purpose of fixing notice of this custom, or of the regulations adopted, upon the plaintiff, it was admissible to show that he was accustomed to manage traveling troupes. Plaintiff had no right to rely upon any implied agreement to carry his stage baggage as if personal baggage, and without additional compensation, unless he could show a general custom, such as exists in regard to personal baggage, and from which general custom an implied contract is presumed. The mere fact, therefore, that he bought a ticket for 18 persons in order to carry 14 does not imply any agreement whatever in respect to the free carriage of articles not properly personal baggage.

9. The difficulty in this case arises out of the fact that Coltman, the advance agent for the plaintiff's company, did apply to the defendant's agents for the terms upon which the defendant would transport plaintiff's company, and was informed that the rate for a company of 18 in one ticket to Lexington, with the privilege of stopping over at Atlanta, Chattanooga, and Knoxville, carried the right of a separate car, without extra charges, for stage baggage, scenery, etc., the car to be carried on the same train or a train in advance.

It was not shown that Coltman was notified then or at any other time that, in addition to buying a ticket for 18 people in order to carry his party of 14, the company must be released from all loss and damage sustained by the company baggage so to be transported with the company. Neither was it shown that either Coltman or the plaintiff was aware of the regulation of the defendant or of the carriers associated as the Southeastern Passenger Association requiring such a release, except as such knowledge may be presumed from the existence of the regulations and of the custom of railroad companies in the matter of such special baggage. Neither was it shown that either Coltman or the plaintiff were furnished with the itinerary set out above, which contained a reference to a release. Coltman informed plaintiff of the terms as given him at Birmingham by the defendant's agent, Freeman, and himself accepted transportation as an advance agent, and continued to travel in advance about one week. About a week after getting the terms of transportation, the troupe reached Birmingham, and plaintiff bought such a party ticket as he had been advised would carry with it a special car for the company baggage without extra cost.

He was not then advised that he must execute a release. That night, when the baggage had been loaded in a car furnished, the defendant's baggage agent demanded that a release should be signed. This demand was made of one Davenport, the company's property man, whose business it was to see to the hauling of the stuff from the theater to the station, and to properly load it into the car furnished for that purpose. Davenport, being shown a copy of the itinerary set out heretofore, signed the release presented. This demand made on Davenport was not communicated to plaintiff, nor did he know that any release had been signed by Davenport until the fact came out in proof. At Atlanta plaintiff bought another solid ticket through to Lexington, Ky., for a party of 18, and paid the party rate as advised by Coltman. He neither then knew, nor was he then notified, that he would have to sign a release before he could have the baggage moved. Before he left Atlanta, but after he had bought his transportation, he was called upon to sign a release of loss and damage, but declined to do so. The baggage was, however, forwarded to Chattanooga, where another demand was made and refused, the baggage being again forwarded without the release. At Knoxville plaintiff refused to sign, and the defendant refused to forward the company theatrical baggage without execution of the release. Twelve hours after, plaintiff signed under protest, and the troupe and baggage went forward, but too late to meet an engagement at Lexington. Excluding imputed notice through Davenport and by means of the alleged notoriety of the regulation here sought to be enforced, plaintiff had a right to believe that he was entitled to the transportation of his company baggage in a special car, and subject to the common-law responsibility of the carrier for loss or injury to that baggage. The only terms known to him when he bought his tickets at Atlanta were those given by defendant's agents to his advance agent, Coltman, whose business it was to arrange for transportation. His rights and the carrier's liabilities were fixed and determined when the tickets were bought, under terms so previously given, covering the matter of baggage transportation. Subsequent notice of a limitation of liability will not alter the rights thus determined, unless he assented thereto upon a sufficient consideration. Rawson v. Penn. Rd. Co., 48 N. Y. 212, 8 Am. Rep. 543; Railroad v. Turner, 100 Tenn. 213, 224, 47 S. W. 223; Wilson v. C. & O. R. Co., 21 Grat. 654; Logan v. Pontchartrain R. Co., 11 Rob. (La.) 24, 43 Am. Dec. 199; 3 Am. & Eng. Ency. Law, 558. If, however, the plaintiff knew, before purchasing his ticket, that the condition under which the baggage of such traveling show was transported without charge was that he should release the company from its common-law liability for loss and damage, the jury would be authorized to presume his assent. His knowledge of the regulation might also be presumed from circumstances, including the generality of the regulation, the time it had been in force, and plaintiff's experience as a traveler with such company. But the evidence upon this matter was not so conclusive as to justify the court in holding, as matter of law, that he knew of this regulation, and had assented to it. Neither did the evidence justify an instruction to find for the defendant upon the ground of Davenport's action at Birmingham.

Coltman was the advance agent of plaintiff, and as such charged with the duty of contracting for transportation. This he did, and upon the strength of the agreement between him and the defendant he was ticketed over the defendant's line, and the itinerary issued to the several agents of the railroad company interested. The terms made were communicated to the plaintiff, and acted upon by him in the purchase, a week later, of a party ticket for 18 from Birmingham to Atlanta, and then from Atlanta to Lexington, Ky. Davenport's duty was to load and unload the company's effects. He was called its "property man." He had no duty in reference to making contracts for the transportation of the company, and still less to agree to the alteration of one after it had been made by the agent of the company charged with that duty. It was error, therefore, to impute Davenport's knowledge to the plaintiff when he bought his tickets from Atlanta to Lexington. He still had the right to suppose that the defendant's agreement to transport his stage effects was subject to its common-law carrier liability, unless he otherwise is chargeable with notice and assent; and was not obliged to agree to a change or alteration of the terms given his agent after the contract had been closed by buying the tickets at Atlanta.

10. The release which the plaintiff was asked to sign does not, in terms, exclude loss and damage arising from negligence. Nor is it broader than the regulation. Neither is valid as an exoneration for liability for negligence of the company or its servants. Railroad v. Lockwood, 17 Wall. 357, 21 L. Ed. 627; Bank of Kentucky v. Adams Ex. Co., 93 U. S. 174, 23 L. Ed. 872. Nevertheless the release would have been valid and enforceable as releasing the company from loss and damage not the result of negligence. It is in general words, and does not, in terms, purport to release the company from liability for negligence. It should therefore be construed consistently with law. A release in like terms was construed as not extending to loss arising from negligence by the lessor or his servants in Railroad v. Lockwood, 17 Wall. 357, 362, 21 L. Ed. 627, and in Bank of Kentucky v. Adams Ex. Co., 93 U. S. 174, 181, 23 L. Ed. 872, where the court said, "It is not to be presumed the parties intended to make a contract which the law does not allow." But the plaintiff did not refuse to sign the release because too general, or for any reason of form. The ground upon which he acted is indicated by the words he wrote across the release, "Provided the baggage is delivered on time and in good condition." If he had expressed a willingness to sign a release limited in terms as the law would limit this one, we would be slow to hold him in fault for not signing one subject to misconstruction.

Reverse, and remand for a new trial.