[No. 1889]

## ANTONE ZETLER, RESPONDENT, *v.* TONOPAH AND GOLDFIELD RAILROAD CO., APPELLANT.

1. CARRIERS—BAGGAGE—LIMITATION OF LIABILITY.

If it be conceded that passenger carriers by specific rules which are reasonable, and not inconsistent with the statutes or with their duties to the public, and which are distinctly brought to the knowledge of the passenger, may protect themselves against liability as insurers of baggage exceeding a fixed value except upon payment of an additional compensation proportioned to the risk, a contract so limiting the amount of liability does not relieve the carrier of liability for baggage lost through its negligence.

2. CARRIERS—BAGGAGE—NEGLIGENCE—WRONG DELIVERY.

The delivery of a passenger's baggage at carrier's baggage room to a person not entitled to receive it is such negligence as makes the company liable, notwithstanding a contract limiting its liability to a fixed value.

NORCROSS, J., dissenting.

APPEAL from the Seventh Judicial District Court, Esmeralda County, Nevada; *Theron Stevens,* Judge.

Action by Antone Zetler against the Tonopah and Goldfield Railroad Company. Judgment for plaintiff; defendant appeals. **Affirmed.** [Petition for rehearing pending.]

The facts sufficiently appear in the opinion.

*Campbell, Metson & Brown, Walter Shelton* and *Huger Wilkerson,* for Appellant:

The contract contained in the ticket is binding and valid. (*Jacobs* v. *Central R. Co.,* 208 Pa. St. 535, 57 Atl. 982; *Rose* v. *Northern Pac. Ry. Co.,* 88 Pac. 767; *The Priscilla,* 106 Fed. 739; *Belger* v. *Dinsmore,* 51 N. Y. 166, 10 Am. Rep. 575; *Pacific Exp. Co.* v. *Foley,* 26 Pac. 667; *Michalitschke* v. *Wells, Fargo & Co.,* 50 Pac. 847; *Ballou* v. *Earle,* 17 R. I. 441, 33 Am. St. Rep. 881; *Hart* v. *Penn. R. Co.,* 112 U. S. 331, 28 L. Ed. 717; *Alair* v. *Northern Pacific R. Co.,* 53 Minn. 160, 39 Am. St. Rep. 588.)

*H. H. Brown,* for Appellant, on petition for rehearing:

On January 4, 1913, the decision and opinion was filed in this case by a divided court, affirming the judgment

below and holding that the limitation of liability, for loss of baggage, is not binding on the respondent.

On January 6, 1913, the Supreme Court of the United States handed down its decisions and opinions in three similar cases, involving the same question, and holding that under a congressional regulation of interstate commerce (the Carmack amendment of 1906), the limitation of the liability is binding on the respondent. (*Adams Express Co.* v. *Croniger,* 226 U. S. 491; *C. B. & Q. Co.* v. *Miller,* 226 U. S. 513; *Chicago, St. Paul, M. & O. Ry. Co.* v. *Latta,* 226 U. S. 519.)

The Zetler case involved an interstate transaction, wholly within the purview of the Carmack amendment. The decisions of the United States Supreme Court are controlling in the case at bar.

*James Donovan,* for Respondent:

It is urged by appellant that respondent is bound by the sixth subdivision contained in the ticket which was offered in evidence by defendant. We submit that there is no force in this statement, for no such contract as is embodied in this ticket can bind the plaintiff under the law of the State of Nevada; such contract is unilateral, inequitable, against the public policy of the State of Nevada, and against the express statutory provisions. (Comp. Laws, 1013, 1017; Rev. Laws, 3553, 3559.)

"The contract contained in the ticket is binding and valid." This is only true under certain conditions, and the courts will not look with favor upon these contracts when they are not, in the strict sense of the law, contracts. Wherever a carrier of freight or passengers fixes a settled rate that the public can either accept or walk, courts in this day do not look upon these as contracts, in the strict sense of the term; it is not the meeting of the minds of the carrier and passenger and the agreement of a certain price, but it is an arbitrary contract, forced involuntarily upon the passenger which he must accept or he cannot ride. For this reason, carriers being *quasi*-public institutions, the legislatures of the different states,

and Congress itself, have assumed a right to fix these rates within limitations; if it were a private contract, Congress could not do this, nor legislatures either, and it is only under certain exceptional conditions that contracts of this character will be held binding, especially in reference to the limitation of the liability of the railroad corporation. There must be an additional consideration given from the railroad company to the passenger outside of the regular fixed rate in order to limit the liability for baggage so as to bind the passenger. Courts no longer hold, where there is a uniform rate fixed which is general in its character, that these limitations are binding, but they only hold where there is an additional consideration going to the passenger from the railroad company that these limitations are binding. (*Hooker* v. *Boston and Maine R. R. Co.*, 209 Mass. 598, 95 N. E. 945.)

The settled law of this country at the present time, as we view it, is this: that where there is a fixed rate for the general public as passengers between certain points that the limitations are not binding; that they are binding only where the passenger travels upon a ticket that is sold for less than the regular rate, and by reason of selling the ticket to the passenger at a lesser rate, the passenger, in consideration of that lesser price, agrees to the limitation of the liability to a certain fixed amount. This is as far as the courts will go in support of the contention of the appellant in this case.

*In Reply to Petition for Rehearing:* The cases cited by appellant and upon which a rehearing is sought are wholly inapplicable to any points involved in the case at bar. There is a wide and conflicting difference between liability in the transportation of ordinary personal property by freight carriers or express carriers and the liability created by the carriage of baggage upon a passenger ticket.

In so far as we have been able to gather from the cases cited, the principle heretofore announced has not been varied by what the appellant terms the Carmack amendment to the interstate commerce act, neither do these

decisions in anywise interfere with the modified rule as we have declared, but they simply confirm what we say is the rule of law applicable to such cases.

By the Court, TALBOT, J.:

This is an appeal from a judgment in favor of the plaintiff for $783.95 for damages for the loss of baggage and from an order denying defendant's motion for a new trial.

[1] The baggage was checked on a ticket which bore a number of written conditions, among which was the one: "It is agreed that the value of the baggage transported under this ticket shall not exceed one hundred dollars." Under the contentions made it may be conceded for the purposes of this case that "it is competent for passenger carriers by specific regulations which are reasonable and not inconsistent with any statute or its duties to the public, and which are distinctly brought to the knowledge of the passenger, to protect themselves against liability as insurers of baggage exceeding a fixed amount in value, except upon additional compensation proportioned to the risk." (Moore on Carriers, sec. 52.) Even if so, it has been held, where such is acknowledged to be the law by decision or even by statute, that the carrier is liable for the baggage lost through his negligence, notwithstanding a valid contract limiting the amount of the liability. (*Tewes* v. *North German Lloyd S. S. Co.*, 42 Misc. Rep. 148, 85 N. Y. Supp. 994; *Holmes* v. *North German Lloyd S. S. Co.*, 184 N. Y. 280, 77 N. E. 21, 5 L. R. A., N. S., 650; *Saleeby* v. *Central R. Co. of New Jersey*, 99 App. Div. 163, 90 N. Y. Supp. 1042; *Williams* v. *Central R. Co. of New Jersey*, 93 App. Div. 582, 88 N. Y. Supp. 434; *Saunders* v. *Southern Ry. Co.*, 128 Fed. 15, 62 C. C. A. 523; *Bank of Kentucky* v. *Adams Exp. Co.*, 93 U. S. 174, 23 L. Ed. 872; *New York Cent. R. R. Co.* v. *Lockwood*, 17 Wall. 357, 21 L. Ed. 627.)

[2] As it appears that the damage was occasioned by the delivery of the trunk by the plaintiff at the baggage

room to some person not entitled to receive it, we think this was such negligence on the part of the company as to render it liable for the value of the articles lost, notwithstanding the contract.

Respondent moved to strike the statement from the files because not filed in time, but we think it was filed within the time properly allowed by extensions.

The judgment of the district court is affirmed.

SWEENEY, C. J.: I concur.

NORCROSS, J., dissenting:

I am unable to concur in the conclusions reached by my associates in this case. The main question involved is of first impression in this court and concerns an important rule of liability of common carriers.

The proofs in the case show that the plaintiff, Zetler, purchased a ticket from the Great Northern Railway Company at Bellingham, State of Washington, for transportation over it and other connecting lines, including that of the defendant, to Goldfield, Nevada. The ticket so purchased was a second-class ticket, which contained the following provisions subscribed to by the plaintiff: "Issued by the Great Northern Railway Line. Good for one passage to Goldfield, Nevada. * * * Subject to the following contract: 1st. In selling this ticket and checking baggage thereon, this company acts as agent and is not responsible beyond its own line. * * * 6th. It is agreed that the value of the baggage transported under this ticket shall not exceed $100. 7th. This ticket must be signed below by the purchaser. * * * No agent or employee has power to modify this contract in any particular. I hereby agree to all the conditions of the above contract. [Signed] A. Zetler, purchaser. Witness: R. M. Smith, agent. A. L. Craig, Passenger Traffic Manager."

The baggage in question was checked the day following the purchase of the ticket and a duplicate check given to the plaintiff therefor, reading in part as follows:

"Special Duplicate Check. Great Northern Railway, * * * via G. N. Ry. to Seattle, N. P. to Portland, Southern Pacific to ———. Tonopah & Goldfield per destiny, 14157, Form 160, Series J. Baggage consists of wearing apparel and personal effects of the passenger, which may be necessary for the journey. The liability of this company and all others over which the baggage passes is limited to $100. All baggage valued in excess of this amount will be transported at proportionate rates."

The principal question involved in this case relates to the amount of damages the plaintiff is entitled to recover. The plaintiff alleged and recovered judgment for damages in the sum of $783.95. There is no testimony upon the part of the plaintiff or proof in this case that the plaintiff did not have knowledge of the terms and conditions of the ticket purchased by him at the time of such purchase and at the time of checking his baggage. So far as the evidence goes, the ticket was offered in evidence by the defendant, the plaintiff acknowledged his signature thereto, and the matter of the ticket was allowed to rest. Presumptively, at least, one who subscribes to an instrument has knowledge of its contents, and, in the absence of evidence that will relieve him from the effect of his apparently voluntary act, he is bound by the provisions of the instrument, otherwise valid, which he has executed. If the ticket upon its face was in effect a valid contract binding upon the plaintiff, the burden was upon the plaintiff to show facts, if such existed, that would relieve him from its otherwise binding force. One of the conditions of the ticket to which plaintiff subscribed was "that the value of the baggage transported under this ticket shall not exceed $100." Unless it can be said that this condition is unreasonable or contrary to some provision of statute, or against public policy, plaintiff is bound by it. It appears that the railroad company selling the ticket had made provision for the carrying of baggage of a higher value than that carried free upon the ticket which could be carried at the company's risk upon the payment

of additional proportionate rates. This provision was printed upon the trunk check received by the plaintiff. Plaintiff in his testimony makes no contention that he was not aware at the time of the provision printed on his check, or that his attention was not called thereto.

Provisions included in railroad tickets, attempting arbitrarily to limit liability for loss of baggage beyond a certain prescribed amount, have been held by the courts to be invalid, as contrary to the rule of the common law. However, as succinctly stated by Moore on Carriers, sec. 52, the authorities very generally recognize that: "It is competent for passenger carriers by specific regulations which are reasonable and not inconsistent with any statute or its duties to the public, and which are distinctly brought to the knowledge of the passenger, to protect themselves against liability as insurers of baggage exceeding a fixed amount in value, except upon additional compensation proportioned to the risk."

Hutchinson on Carriers, vol. 3, sec. 1297, says: "In general, it may be stated that there is no distinction between the baggage of a passenger and ordinary goods in respect to the rights of the parties to enter into contracts limiting the liability of the carrier." And again, in section 1299, the author says: "Conditions intended to restrict the carrier's common-law liability in respect to the carriage of baggage are frequently written or printed upon passenger tickets, and the question arises as to the extent to which such conditions will be binding on the person accepting the ticket. If the ticket imports a special contract, the presumption will arise that the person accepting the ticket knew of and thereby assented to such of its lawful limitations as were plainly written or printed upon it as a part of the contract."

In the recent case of *Hooker* v. *Boston and Maine Railroad,* 209 Mass. 598, 95 N. E. 945, Ann. Cas. 1912B, 669, cited by respondent, the Supreme Court of Massachusetts, while holding the defendant company to full liability for the loss of baggage in question, because regulations limiting liability were not brought to the

knowledge of the plaintiff or assented to, said: "The common-law rule fixing the rights of the parties is not open to doubt. It is that respecting the transportation of baggage or merchandise a common carrier may relieve itself from many of the heavy responsibilities amounting to insurance cast upon it by the law. It may not exonerate itself, however, by regulation or by contract from liability for its own negligence, but it may make just and reasonable stipulations in good faith as to the value of the property intrusted to its care, and the amount for which it shall respond in case of loss, even though occurring through its own negligence. Such stipulations must be brought home to the knowledge of the shipper through either a formal contract, or express or inferable notice, under circumstances warranting the assumption of actual assent"—citing many authorities.

In the leading case of *Railroad Company* v. *Fraloff*, 100 U. S. 24, 25 L. Ed. 531, the court by Harlan, J., says: "It is undoubtedly competent for carriers of passengers, by specific regulations, distinctly brought to the knowledge of the passenger which are reasonable in their character, and not inconsistent with any statute or their duties to the public, to protect themselves against liability, as insurers, for baggage exceeding a fixed amount in value, except upon additional compensation, proportioned to the risk." The distinction between cases where there has been an agreement between the carrier and the passenger or shipper as to value and where there has been an attempt to limit liability, regardless of value, is illustrated by the recent case of *Wells* v. *Great Northern Railway Company*, 59 Or. 165, 176, 116 Pac. 1070, 1071, 34 L. R. A. (N. S.) 825, wherein the court said: "The defendant also mistakes the effect of the seventh clause of the contract, limiting the liability of the company. It is not a stipulation of the value of the goods shipped, but limits the liability to $100 in any case, and is not an agreed value of the goods shipped. 'The baggage liability is limited to wearing apparel only, not exceeding $100 in value,' and the passenger does not participate

in fixing the amount.  He must accept the stipulation as given in the ticket, or leave his baggage.  This is conceded in the second brief filed on this motion, where it is contended that the limitation is fixed by the schedule of rates filed by the company with the interstate commerce commission, and has the force and effect of a law.  Without assenting to that statement, certainly there was no agreement as to the value of the goods shipped.  Mr. Justice Wolverton, in *Normile* v. *Oregon Nav. Co.*, makes the distinction between an attempt by the carrier to stipulate against liabilities, regardless of the value, and a stipulation fixing the value of the freight to be carried; and counsel for defendant claim that this case comes within the latter class, but in this he is in error.  It is said at page 184 of 41 Or., at page 930 of 69 Pac.: 'It is a sound and wholesome doctrine, based upon consideration of public policy and fair dealing, that a common carrier will not be permitted to stipulate against liability for the loss or injury of property intrusted to it for carriage and transportation, occasioned by its own negligence.  *  *  *  Nor can the carrier be permitted to stipulate or contract for partial or limited exemption from liability occasioned by its negligence with any more reason than it may for a total exemption.'  And, on the other hand, he recognized that the shipper may agree with the company upon the value of the goods shipped, and be bound thereby, and 'if plaintiff freely and without restraint—that is, was laboring under no such inequality of conditions as that he was compelled to enter into the contract, whether he would or not, in order to have his stock carried—executed the contract in question, he is bound by the stipulations as to the value.'  Here there is no stipulation as to value, but there is an attempt to limit the liability, regardless of value."  In the case at bar, the evidence shows, without contradiction, that the plaintiff entered into what purports to constitute a mutual contract between himself and the carriers (6 Cyc. 570, 574; *Rose* v. *N. P. Ry. Co.*, 35 Mont. 70, 88 Pac. 769, 119 Am. St. Rep. 836; *Donlon* v. *Southern*

*Pacific Company*, 151 Cal. 763, 91 Pac. 603, 11 L. R. A., N. S., 811, 12 Ann. Cas. 1118), wherein it was agreed that the value of his baggage to be transported under his ticket should not exceed $100. It also appears from the evidence that upon the payment of an additional proportionate charge the carrier would have transported the baggage and assumed the risk up to the value claimed.

It cannot be said, I think, under the facts of this case, that the stipulation as to value was unreasonable. (*Tewes* v. *N. G. L. Steamship Co.,* 186 N. Y. 151, 78 N. E. 864, 8 L. R. A., N. S., 199, 9 Ann. Cas. 909; *Rose* v. *N. P. Ry. Co., supra; The New England,* 110 Fed. 418; *The Priscilla,* 106 Fed. 739.)

Nothing in the sections of our statutes cited by counsel for respondent (Rev. Laws, 3553, 3558, 3559), I think, militates against a passenger or shipper contracting with a carrier and agreeing in advance as to the value of the baggage or other property shipped, so as to estop such passenger or shipper from asserting a higher value than that stated in his contract upon which the rate of transportation has· been fixed, based upon such value. (*Rose* v. *Railway Co., supra; Hart* v. *Pennsylvania R. R. Co.,* 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717.)

In the Hart case, *supra,* the Supreme Court of the United States said: "The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to the contract. The carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and, where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the

contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

It is the policy of both the federal and state governments to require common carriers to fix passenger and commodity charges, as far as possible, on a basis of service rendered. It is universally recognized that the value of any article transported is a proper matter to be considered in fixing the charge. Theoretically, and presumably practically, liability for loss or injury enters into the consideration in fixing a charge for the transportation of freight or baggage. If the carrier may not by mutual contract or regulation fix a reasonable limit upon the value of baggage which it will carry upon a ticket without additional charge, then the carrier is bound to assume a greater liability, which, presumably, would result in a greater charge. Doubtless, the great mass of passengers on railroads do not carry baggage of a value in excess of $100, and such passengers ought not to be compelled to pay an additional charge to cover the liability which the carrier would have to assume in cases of passengers carrying baggage of a higher value. The fixing of a reasonable limit on the value of baggage to be carried free upon a ticket, providing the passenger is permitted to carry baggage of a higher value at the carrier's risk, upon paying an additional proportion to charge, violates no rule of public policy and is fair and just to all passengers.

For the reasons given, I think a new trial should be granted.

NOTE—At the time of printing this volume petition for rehearing the foregoing case is pending.