[No. 2365]

## SOUTHERN PACIFIC COMPANY (A CORPORATION), APPELLANT, *v.* E. J. HAUG, RESPONDENT.

[182 Pac. 92]

1. CARRIERS—LIMITATION OF LIABILITY FOR NEGLIGENCE—LOSS.
    A common carrier cannot, by contract, avoid liability for loss or damage to freight caused by its own negligence or that of its servants.

2. CARRIERS—LIABILITY FOR LOSS OR DAMAGE—LIMITATION—VALUATION.
    A railroad's contract fixing a valuation on intrastate shipment negligently destroyed *held* void, where property's actual value was greater.

3. CARRIERS—LOSS OF GOODS—DAMAGES—MEASURE.
    Irrespective of statute, it is a general rule that measure of damages where goods intrusted to a carrier are destroyed is their value with interest from the date delivery should have been made.

APPEAL from Second Judicial District Court, Washoe County; *George A. Bartlett,* Judge.

Action by E. J. Haug against the Southern Pacific Company. Judgment for plaintiff, and defendant appeals. **Affirmed,** COLEMAN, C. J. dissenting.

*Brown & Belford,* for Appellant:

While a common carrier cannot by contract avoid its liability for negligence, its liability can be fixed and limited where, in view of a consideration such as a lower freight rate, a valuation is placed by the shipper on the goods, such valuation being placed for the purpose of securing such lower rate. Hart v. Railroad, 112 U. S. 331; Donlon v. S. P. Co., 90 Pac. 603; 12 Ann.

Cas. 118, 1124, 1130; Pacific Express Co. v. Foley, 26 Pac. 665; Bernard v. Adams Express Co., 176 Mass. 280; Durgen v. Atlantic Express Co., 20 Atl. 328; Zimmer v. Railroad, 137 N. Y. 460; Tewes v. S. S. Co., 186 N. Y. 151; Hill v. Railroad, 74 Pac. 1054; Loesser v. Railroad, 69 N. W. 372; 10 C. J. 165; 1 Hutchinson on Carriers (3d ed.) sec. 426; 4 Elliott on Railroads (2d ed.) sec. 1510.

The ruling of the Supreme Court of Nevada in Zetler v. T. & G. R. R. Co., 35 Nev. 381, 37 Nev. 486, should not be extended to the case at bar. It should be strictly limited to cases like the Zetler case, or frankly overruled. Clarke-Lawrence Co. v. Railway Co. 61 S. E. 365; Henry v. Canadian Pac. Ry. Co., 1 Man. 210; 10 C. J., sec. 237.

The public generally, and particularly all persons in any way interested in any shipment over a railroad within this state, must be presumed to have notice of the schedules of rates filed with the state railroad commission and the classifications of freight in force, which must also be filed, and all the rules and regulations that in any manner affect the rates charged, which must be published with, and as a part of, such schedules. Rev. Laws, 4552; American Sugar R. Co. v. Railroad, 207 Fed. 33; Armour Packing Co. v. U. S., 209 U. S. 56; Smith v. Railway, 107 N. W. 56; Enderstein v. Railway, 157 Pac. 670.

*Withers & Withers,* for Respondent:

Public policy will not permit a common carrier to escape liability for negligence by any contract or any conditions placed upon a bill of lading. A common carrier may limit its liability as an insurer by reasonable and fair contracts or regulations. 10 C. J., secs. 168, 218. There is a distinction between liability for negligence and as an insurer. Zetler v. Railroad, 35 Nev. 381, 27 Nev. 486.

Plaintiff is entitled to recover the full value of the goods destroyed. He had never seen the bills of lading

until after the goods had been destroyed. 1 Ann. Cas. 672; 12 Ann. Cas. 1125.

The court cannot overrule the Zetler case. "It is also a well-known rule that the courts have nothing to do with the general policy of the law." Vineyard L. & S. Co. v. District Court, 171 Pac. 166, 168. "Courts are justified in overruling former decisions only where the same are deemed to be clearly erroneous." Ex Parte Woodburn, 32 Nev. 136.

By the Court, Ducker, J.:

This is an appeal from a judgment in favor of the respondent for the sum of $2,365.90 for damages for the destruction of certain personal property, consisting of wedding presents, furniture, and other household goods, belonging to respondent.

The appellant is a railroad company and a common carrier. The said personal property was received by it at Reno, Nevada, for shipment to Mina, Nevada, en route to its final destination at Manhattan, Nevada. A collision occurred between two of the railroad company's trains a short distance from Reno, and the car in which the said personal property was being carried was wrecked and burned and the property totally consumed by fire. Appellant admitted negligence and sought to make a partial defense. In the appellant's answer the following partial defense was pleaded:

"That on or about August 14, 1917, said Nevada Transfer Company delivered to defendant at its depot in Reno, Nevada, for shipment and transportation over defendant's line of railroad from Reno, Nevada, and thence to Tonopah, Nevada, over the railroad of the Tonopah and Goldfield Company, a connecting carrier, en route to its final destination which was Manhattan, Nevada, certain personal property which defendant alleges, on information and belief, to have been the property of the plaintiff and the property mentioned and intended to be described by the complaint herein, as having been delivered to defendant for shipment by said

Nevada Transportation Company, which said property was contained in boxes and other packages, the contents of which were unknown to defendant except one cook-stove, and all of which property except said cook-stove was represented by the Nevada Transfer Company to be household goods. That the said personal property was then and there delivered to defendant and by it received for shipment over its said line of railroad as aforesaid and a bill of lading made out and executed by and in behalf of said Nevada Transfer Company as shipper and by and in behalf of the said defendant, the said goods being consigned to the plaintiff, with destination indicated as Manhattan, Nevada. And defendant further alleges upon information and belief that, prior to the delivery of said personal property to defendant, said Nevada Transfer Company had by the person in possession and in control of the said property, and from whom said Nevada Transfer Company received it, and who was acting for and in behalf of the owner thereof, been hired and employed, authorized and directed to haul and carry the said personal property to the defendant at its depot in Reno, and to deliver said personal property to the defendant for shipment and consigned as aforesaid, and to make and enter into any necessary and proper contract or arrangement with defendant for the transportation of such property, including the making of a declaration of the value of said goods for the purpose of obtaining the lowest freight rates thereon under the schedules and classifications hereinafter alleged.

"II. That on the said 14th day of August, 1917, and long prior thereto, the defendant and said Tonopah and Goldfield Railroad Company, its connecting carrier, had certain schedules of joint rates in force between Reno, Nevada, and Tonopah, Nevada, which said schedules had as parts thereof and attached thereto, the rules and regulations in force, including the classifications upon which said rates were made and based, and including a certain classification known as and called the Western Classification, and which schedules and classifications

provided for two different freight rates classified as household goods and shipped in less-than-carload lots. That the joint rate from Reno, Nevada, to Tonopah, Nevada, over the railroad of defendant and over the Tonopah and Goldfield Railroad on said 14th day of August, 1917, upon household goods, where the actual value of each article shipped did not exceed $10 per hundred pounds, or the proportionate amount thereof, if the weight was less than 100 pounds, subject to rule 2 of the Western Classification, was $1.55 per hundredweight, and that the freight rate upon household goods shipped in less-than-carload lots, whose actual valuation exceeded $10 per 100 pounds, subject to rule 2 of said Western Classification, was $2.32½ per hundred pounds. That rule 2 of said Western Classification was and is as follows:

" 'Rule 2.  Ratings for various articles are conditioned upon actual valuations declared by the shipper at time and place of shipment; and the following stipulation must be entered in full on shipping order and bill of lading and signed by the shipper:

" 'I. We hereby declare the value of the property herein described to be ........ per .............

........................................[Shipper's signature.]

" 'Where shipper refuses to declare value at time and place of shipment, goods will not be accepted for transportation.'

"That the said Western Classification and schedules of freight rates and tariffs were on the said 14th day of August, 1917, and long prior thereto, contained in printed schedules filed by and in behalf of the defendant and said Tonopah and Goldfield Railroad Company and on file with the Railroad Commission of Nevada, and that two copies of said schedules for the use of the public were then on file and kept on file in each of the depots, stations and offices of the defendant and of the Tonopah and Goldfield Railroad Company within the State of Nevada where passengers or freight were received for transportation, including the depots, stations and offices

at said Reno and Tonopah, and in such form and place as to be accessible to the public and where said schedules could be conveniently inspected, and that the rates and charges hereinbefore in this answer specified, were named in such schedules and were then in force.

"III. That said personal property so delivered by said Nevada Transfer Company to defendant as aforesaid on August 14, 1917, and represented by it as aforesaid to be household goods and which defendant, according to its information and belief, alleges to have been of the kind of goods classified and described in said schedules of freight rates as household goods, was shipped in less than a carload lot, and that the total weight of the articles so delivered to defendant and received for transportation by it as household goods was 3,655 pounds. That the said cook-stove was shipped separately and weighed 225 pounds, and took a freight rate from Reno to Tonopah, in accordance with said tariff schedules of $1.28 per hundredweight. And defendant alleges on information and belief. that said Nevada Transfer Company, the shipper of said personal property, knowing the classification of household goods, and that there were two freight rates thereon depending upon whether the value of said goods did or did not exceed $10 per 100 pounds and knowing the requirement of said rule 2 of said Western Classification that, where the rating of goods shipped was conditioned upon actual valuation, such valuation must be declared, and, desiring and intending thereby that only the lower of said freight rates should be charged and collected thereon, did declare, at the time and place of shipment, that the value of the property shipped (other than said cook-stove) did not exceed $10 per 100 pounds for each article, or the proportionate amount thereof if the weight was less than 100 pounds, and that the following stipulation was on said August 14, 1917, entered in full in writing on each shipping order and bill of lading covering the shipment of said property and was signed by the Nevada. Transfer Company as shipper:

" 'I. We hereby declare the value of property herein described to be not to exceed $10 per 100 pounds for each article or proportionate amount thereof if weight is less than 100 pounds.'

"IV. That the bills of lading upon which said goods were received for transportation and transported by the defendant, and which were signed by said Nevada Transfer Company and by the defendant, expressly provided that every service to be performed thereunder should be subject to all the conditions, whether printed or written, therein contained, including the conditions on the back thereof, which said conditions were agreed to by the shipper and accepted for the shipper and his or its assigns, and that among the conditions printed upon the back of said bills of lading, was the following:

" 'The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the property at the time and place of shipment under the bill of lading.' "

Then follows a statement in the pleading to the effect that, by reason of the facts alleged, plaintiff (respondent herein) should be estopped from proving or attempting to prove that the actual value of the property, excepting said cook-stove, was more than the agreed valuation.

Respondent demurred to this partial defense. The court below sustained the demurrer and, after a trial of the case, rendered judgment for the actual value of the property with interest thereon at the rate of 7 per cent from the date of judgment.

The principal error assigned is the action of the court in sustaining respondent's demurrer which deprived appellant of the partial defense pleaded. As previously stated, the loss of the property through the negligence of the railroad company's employees was admitted. The shipment was an intrastate transaction.

It will be observed that the contract in the bills of lading does not exempt the company from liability for loss or damage, but limits such liability to an agreed

valuation of the property, based on the lower of two freight rates for transportation.

1. That a common carrier cannot by contract exempt itself from liability for loss or damage of freight occasioned by its own negligence, or that of its servants, is so elementary as to require no citation of authority.

2. But on the precise question presented in this case concerning its liability under a contract obviously made to obtain a cheaper rate of transportation, by a declared valuation, there are two well-recognized rules regulating a common carrier's liability.

The rule declared by the Supreme Court of the United States concerning interstate shipments as announced in Hart v. Pennsylvania Railroad Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, and reaffirmed in Adams Express Co. v. Croniger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N.S.) 257, and later decisions of that court, is that—

"Such a carrier may, by a fair, open, just, and reasonable agreement, limit the amount recoverable by a shipper in case of loss or damage to an agreed value made for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk." Adams Express Co. v. Croniger, supra.

This is the federal rule and is adhered to in a number of the states in cases involving interstate shipments, and in some jurisdictions is applied by the state courts to intrastate transactions.

In a number of states, prior to the Carmack amendment (Act June 29, 1906, c. 3591, sec. 7, pars. 11, 12, 34 Stat. 595) of the interstate commerce act (Act Feb. 4, 1887, c. 104, sec. 20, 24 Stat. 386, U. S. Comp. St. secs. 8604a, 8604aa) and the interpretation of that amendment in Adams Express Co. v. Croniger, supra, the rule was declared, that—

"When loss or damage results from a violation of the contract of shipment, growing out of the negligence of of the carrier or its servants, any limitation as to the

amount recoverable for loss or injury contained in the contract of shipment is inoperative, although a reduced rate is charged." 10 C. J., p. 171, and cases cited.

Of course, it cannot be said that the federal rule applicable to limited liability contracts in interstate carriage is necessarily operative as regards intrastate shipments, but appellant asks that it be applied here. We are of the opinion that the question is not one of first impression in this court, and that it was determined in Zetler v. T. & G. R. R. R. Co., 35 Nev. 381, 129 Pac. 299, L. R. A. 1916A, 1270, adversely to appellant's contention, and the rule there declared for this state that a common carrier is liable for the actual value of property lost through negligence, notwithstanding a contract for a lesser valuation. The case was affirmed on a rehearing. Zetler v. T. & G. R. R. Co., 37 Nev. 486, 143 Pac. 119. In that case the action against the railroad company was for damages for the loss of a passenger's trunk delivered from the baggage-room to some person not entitled to receive it.

The court said in the original opinion, and in substantially the same language in the decision on rehearing, that—

The delivery of the trunk "was such negligence on the part of the company as to render it liable for the value of the articles lost, nothwithstanding the contract."

Appellant earnestly insists that the case of Zetler v. T. & G. R. R. Co. is not controlling in the case before us, and that we should confine it within its particular facts, and thus distinguish it from the instant case, or else overrule it as erroneous, for the reason that it involved an interstate carriage, and the court was therefore bound to apply the federal rule concerning limited liability contracts.

Aside from its being a case involving an interstate shipment, we can discern no substantial difference in the facts of the former case and the one at bar. In each case there was a contract for carriage at an agreed

valuation.  In the one case the contract was printed on
the ticket of the passenger, and in the other was con-
tained in the bill of lading.

From the affirmative defense in the answer in the
instant case it appears that the valuation was made to
obtain the lesser of two freight rates for carriage, and
from the facts of the case of Zetler v. T. & G. R. R. Co.
it appears that the baggage, which was valued in the con-
tract at $100, was carried free in consideration of the
ticket, but that a higher valuation could have been
obtained upon the payment of additional proportionate
rates.

That it was baggage lost by negligence in the case of
Zetler v. T. & G. R. R. Co., and freight destroyed in the
instant case, makes no distinction in facts that calls for
the application of a different rule of liability.   Saunders
v. Southern Ry. Co., 128 Fed. 20, 62 C. C. A. 523.

In Hutchinson on Carriers, vol. 3, sec. 1297, the author
says:

"In general, it may be stated that there is no distinc-
tion between the baggage of a passenger and ordinary
goods, in respect to rights of parties to enter into con-
tracts limiting the liability of the carrier."

We see nothing in the language of the court in Zetler
v. T. & G. R. R. Co., either in the original opinion or in
the opinion on rehearing, from which a conclusion can
be reasonably drawn that the court intended to limit the
rule announced to more than ordinary negligence.

But assuming that such a construction might be
placed on the language of the court, it cannot be said
that there is a greater degree of negligence in the act of
a servant of a common carrier in delivering a passen-
ger's trunk to a person not entitled to receive it, than in
the acts of employees of such a carrier which occasion
a head-on collision between trains by which property is
lost in the one instance and destroyed in the other.

That the court, in Zetler v. T. & G. R. R. Co., intended
to and did announce a rule of liability in this state as to

common carriers for ordinary negligence in the transportation of property in this state notwithstanding a special contract limiting the amount of recovery to an agreed valuation, is further apparent from the fact that the court clearly recognized the well-settled right of such carrier to protect itself from liability as an insurer, by a proper contract. Upon this point the court said:

"Under the contentions made, it may be conceded for the purposes of this case that 'it is competent for passenger carriers by specific regulations which are reasonable and not inconsistent with any statute or its duties to the public, and which are distinctly brought to the knowledge of the passenger, to protect themselves against liability as insurers of baggage exceeding a fixed amount in value, except upon additional compensation.' "

And added:

"Even if so, it has been held, where such is acknowledged to be the law by decision or even by statute, that the carrier is liable for the baggage lost through his negligence, notwithstanding a valid contract. limiting the amount of the liability." (Citing cases.)

The language quoted above, as well as that employed by the court in its opinion on rehearing, convinces us that appellant's contention, that the court intended to limit the case to an exception of the federal rule heretofore stated, is not inferable, except by a most constrained construction of the language used.

We deem it unnecessary to decide in this case, which involves an intrastate transaction, whether or not this court, in Zetler v. T. & G. R. R. Co., which involved an interstate carriage, should have been governed by the interstate commerce act as amended by the Carmack amendment, and construed in Adams Express Co. v. Croniger, supra. Adams Express Company v. Croniger was decided by the United States Supreme Court after the original opinion was rendered in Zetler v. T. & G. R. R. Co. and before the rehearing in the latter case. It was cited to this court in that case on the rehearing, and the court adhered to its original opinion in the decision

on rehearing.    Regardless of the interstate feature of the case, we think Zetler v. T. & G. R. R. Co. is ruling in this action for the reasons given.

By reason of the view we have taken, it is unnecessary to determine whether or not the respondent was bound by the declaration of value made by the Nevada Transfer Company, from which appellant received the goods for shipment.

3. There was no error committed in including, in the judgment, interest on the actual value of the property destroyed.

Where the matter is not regulated by statute, it is well settled as a general rule that the measure of damages in a case of a common carrier is the value of the goods intrusted to it for transportation, with interest from the time they ought to have been delivered.    New York, Lake Erie and Western Ry. Co. v. Estill, 147 U. S. 591, 13 Sup. Ct. 444, 37 L. Ed. 292; Fell v. Union Pac. Ry. Co., 32 Utah, 101, 88 Pac. 1003, 28 L. R. A. (N.S.) 1, 13 Ann. Cas. 1137; 10 C. J. 400.

The judgment of the lower court is affirmed.

COLEMAN, C. J.:  I dissent.